*265 Opinion
CHIN, J.
In Graham v. Florida (2010) 560 U.S. 48 [176 L.Ed.2d 825, 130 S.Ct. 2011] (Graham), the high court held that the Eighth Amendment prohibits states from sentencing a juvenile convicted of nonhomicide offenses to Ufe imprisonment without the possibiüty of parole. (560 U.S. at p. _ [130 S.Ct. at p. 2030].)[1] We must determine here whether a 110-year-to-life sentence imposed on a juvenile convicted of nonhomicide offenses contravenes Graham’s mandate against cruel and unusual punishment under the Eighth Amendment. We conclude it does.
Factual And Procedural Background
On the afternoon of June 6, 2007, 16-year-old defendant, Rodrigo Caballero, opened fire on three teenage boys who were members of a rival gang. Adrian Bautista, Carlos Vargas, and Vincent Valle, members of the Val Verde Park Gang, were rounding a street comer on foot when defendant jumped out of a green Toyota and yelled out the name of his gang, either “Vario Lancas” or “Lancas.” Vargas responded by shouting, “Val Verde.” Defendant began shooting at the group. Neither Vargas nor Valle was hit by the gunfire; Bautista was hit in the upper back, near his shoulder blade.
A jury convicted defendant of three counts of attempted murder (Pen. Code, §§ 664, 187, subd. (a)).[2] The jury found true that defendant personally and intentionally discharged a firearm (§ 12022.53, subds. (c), (d)) and inflicted great bodily harm on one victim (§ 12022.7), and that defendant committed the crimes for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)). Defendant, a diagnosed schizophrenic, testified in his own behalf after he was treated with antipsychotic medication. He told the jury both that he “was straight trying to kill somebody” and that he did not intend to kill anyone. The trial court sentenced defendant to 15 years to life for the first attempted murder count, plus a consecutive 25 years to life for the firearm enhancement. (§ 12022.53, subd. (d).) For the second attempted murder, the court imposed an additional consecutive term of 15 years to life, plus 20 years for the firearm enhancement on that count. (§ 12022.53, subd. (c).) On the third attempted murder count, the court sentenced defendant to another consecutive term of 15 years to life, plus 20 years for the corresponding firearm enhancement. (§ 12022.53, subd. (c)). Defendant’s total sentence was 110 years to life. The Court of Appeal affirmed the trial court’s judgment in its entirety.
*266 We granted defendant’s petition for review to determine whether Graham prohibits imposition of the sentence here.
Discussion
In Graham, the 16-year-old defendant, Terrance Graham, committed armed burglary and attempted armed robbery, was sentenced to probation, and subsequently violated the terms of his probation when he committed other crimes. (Graham, supra, 560 U.S. at p._[130 S.Ct. at p. 2020].) The trial court revoked his probation and sentenced him to life in prison for the burglary. (Ibid.) Graham’s sentence amounted to a life sentence without the possibility of parole because Florida had abolished its parole system, leaving Graham with no possibility of release unless he was granted executive clemency. (Id. at p._[130 S.Ct. at p. 2015].)
The high court stated that nonhomicide crimes differ from homicide crimes in a “moral sense” and that a juvenile nonhomicide offender has a “twice diminished moral culpability” as opposed to an adult convicted of murder—both because of his crime and because of his undeveloped moral sense. (Graham, supra, 560 U.S. at p._[130 S.Ct. at p. 2027].) The court relied on studies showing that “developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds. For example, parts of the brain involved in behavior control continue to mature through late adolescence. [Citations.] Juveniles are [also] more capable of change than are adults, and their actions are less likely to be evidence of ‘irretrievably depraved character’ than are the actions of adults.” (Id. at p. _ [130 S.Ct. at p. 2026], quoting Roper v. Simmons (2005) 543 U.S. 551, 570 [161 L.Ed.2d 1, 125 S.Ct. 1183].) No legitimate penological interest, the court concluded, justifies a life without parole sentence for juvenile nonhomicide offenders. (Graham, at p._[130 S.Ct. at p. 2030].)
Although the state is by no means required to guarantee eventual freedom to a juvenile convicted of a nonhomicide offense, Graham holds that the Eighth Amendment requires the state to afford the juvenile offender a “meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation,” and that “[a] life without parole sentence improperly denies the juvenile offender a chance to demonstrate growth and maturity.” (Graham, supra, 560 U.S. at p._[130 S.Ct. at pp. 2029-2030].) The court observed that a life without parole sentence is particularly harsh for a juvenile offender who “will on average serve more years and a greater percentage of his life in prison than an adult offender.” (Id. at p._[130 S.Ct. at p. 2028].) Graham likened a life without parole sentence for nonhomicide offenders to the death penalty itself, given their youth and the prospect that, as the years progress, juveniles can reform their deficiencies and become contributing members of society. (Ibid.)
*267 The People assert that Graham’s ban on life without parole sentences does not apply to juvenile offenders who commit attempted murder, with its requisite intent to kill. The People also claim that a cumulative sentence for distinct crimes does not present a cognizable Eighth Amendment claim, concluding that each of defendant’s sentences was permissible individually because each included the possibility of parole within his lifetime.[3] In addition, the Court of Appeal reasoned that Graham applied a categorical rule specifically limited to juvenile nonhomicide offenders receiving an explicitly designated life without parole sentence: “[I]f [Graham] had intended to broaden the class of offenders within the scope of its decision, it would have [included] . . . any juvenile offender who received the functional equivalent of a life sentence without the possibility of parole for a nonhomicide offense.” The Court of Appeal found support for its conclusion in Justice Alito’s dissent in Graham: “Nothing in the Court’s opinion affects the imposition of a sentence to a term of years without the possibility of parole.” (Graham, supra, 560 U.S. at p. _ [130 S.Ct. at p. 2058] (dis. opn. of Alito, J.).) Graham’s scope and application, however, were recently clarified in Miller v. Alabama (2012) 567 U.S._[183 L.Ed.2d 407, 132 S.Ct. 2455] (Miller).
In Miller, the United States Supreme Court extended Graham’s reasoning (but not its categorical ban) to homicide cases, and, in so doing, made it clear that Graham’s “flat ban” on life without parole sentences for juvenile offenders in nonhomicide cases applies to their sentencing equation regardless of intent in the crime’s commission, or how a sentencing court structures the life without parole sentence. (Miller, supra, 567 U.S. at pp. _, _ [132 S.Ct. at pp. 2465, 2469].) The high court was careful to emphasize that Graham’s “categorical bar” on life without parole applied “only to nonhomicide crimes.” (Id. at p. _ [132 S.Ct. at p. 2465].) But the court also observed that “none of what [Graham] said about children—about their distinctive (and transitory) mental traits and environmental vulnerabilities—is crime-specific. Those features are evident in the same way, and to the same degree, when ... a botched robbery turns into a killing. So Graham’s reasoning implicates any life-without-parole sentence imposed on a juvenile, even as its categorical bar relates only to nonhomicide offenses.” (Miller, supra, 567 U.S._[132 S.Ct. at p. 2465].) Miller therefore made it clear *268 that Graham’s “flat ban” on life without parole sentences applies to all nonhomicide cases involving juvenile offenders, including the term-of-years sentence that amounts to the functional equivalent of a life without parole sentence imposed in this case.[4]
Defendant in the present matter will become parole eligible over 100 years from now. (§ 3046, subd. (b) [requiring defendant to serve a minimum of 110 years before becoming parole eligible].) Consequently, he would have no opportunity to “demonstrate growth and maturity” to try to secure his release, in contravention of Graham’s dictate. (Graham, supra, 560 U.S. at p._[130 S.Ct. at p. 2029]; see People v. Mendez (2010) 188 Cal.App.4th 47, 50-51 [114 Cal.Rptr.3d 870] [holding that a sentence of 84 years to life was the equivalent of life without parole under Graham, and therefore cruel and unusual punishment].) Graham’s analysis does not focus on the precise sentence meted out. Instead, as noted above, it holds that a state must provide a juvenile offender “with some realistic opportunity to obtain release” from prison during his or her expected lifetime. (Graham, supra, 560 U.S. at p._ [130 S.Ct. at p. 2034].)
Conclusion
Consistent with the high court’s holding in Graham, supra, 560 U.S. 48 [130 S.Ct. 2011], we conclude that sentencing a juvenile offender for a nonhomicide offense to a term of years with a parole eligibility date that falls outside the juvenile offender’s natural life expectancy constitutes cruel and unusual punishment in violation of the Eighth Amendment. Although proper authorities may later determine that youths should remain incarcerated for their natural lives, the state may not deprive them at sentencing of a meaningful opportunity to demonstrate their rehabilitation and fitness to reenter society in the future. Under Graham’s nonhomicide ruling, the sentencing court must consider all mitigating circumstances attendant in the *269 juvenile’s crime and life, including but not limited to his or her chronological age at the time of the crime, whether the juvenile offender was a direct perpetrator or an aider and abettor, and his or her physical and mental development, so that it can impose a time when the juvenile offender will be able to seek parole from the parole board. The Board of Parole Hearings will then determine whether the juvenile offender must be released from prison “based on demonstrated maturity and rehabilitation.” (560 U.S. at p. _ [130 S.Ct. at p. 2030].) Defendants who were sentenced for crimes they committed as juveniles who seek to modify life without parole or equivalent de facto sentences already imposed may file petitions for writs of habeas corpus in the trial court in order to allow the court to weigh the mitigating evidence in determining the extent of incarceration required before parole hearings. Because every case will be different, we will not provide trial courts with a precise timeframe for setting these future parole hearings in a nonhomicide case. However, the sentence must not violate the defendant’s Eighth Amendment rights and must provide him or her a “meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation” under Graham's, mandate.
We reverse the judgment of the Court of Appeal and remand the matter for reconsideration in light of this opinion.[5]
Cantil-Sakauye, C. J., Kennard, J., Baxter, J., and Corrigan, J., concurred.

 The Eighth Amendment applies to the states. (Robinson v. California (1962) 370 U.S. 660 [8 L.Ed.2d 758, 82 S.Ct. 1417].)

 All statutory references are to the Penal Code unless otherwise indicated.

 The People also rely on Lockyer v. Andrade (2003) 538 U.S. 63 [155 L.Ed.2d 144, 123 S.Ct. 1166] for the proposition that a juvenile offender may receive consecutive mandatory terms exceeding his or her life expectancy without implicating the prohibition against cruel and unusual punishment. In our view, no such conclusion may be drawn. In fact, in Lockyer the high court noted that it has never provided specific guidance “in determining whether a particular sentence for a term of years can violate the Eighth Amendment,” observing that it had “not established a clear or consistent path for courts to follow.” (Id. at p. 72.) We note that the term “life expectancy” means the normal life expectancy of a healthy person of defendant’s age and gender living in the United States.

 Although Miller concluded that Graham’s categorical ban on life without parole sentences applies only to all nonhomicide offenses, the court emphasized that in homicide cases, states are forbidden from imposing a “[m]andatory life without parole for a juvenile.” (Miller, supra, 567 U.S. at p._[132 S.Ct. at p. 2468].) The high court noted that such mandatory sentences preclude consideration of juveniles’ chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surround them—no matter how brutal or dysfunctional. (Ibid.) Thus, in Miller the high court did “not foreclose a sentencer’s ability” to determine whether it was dealing with homicide cases and the “ ‘rare juvenile offender whose crime reflects irreparable corruption.’ ” (Id. at p._[132 S.Ct. at p. 2469], quoting Roper, supra, 543 U.S. at p. 573; see Graham, supra, 560 U.S. at p._[130 S.Ct. at p. 2026].) The court requires sentencers in homicide cases “to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.” (Miller, supra, 567 U.S. at p.__ [132 S.Ct. at p. 2469].) We leave Miller’s application in the homicide context to a case that poses the issue.

 We urge the Legislature to enact legislation establishing a parole eligibility mechanism that provides a defendant serving a de facto life sentence without possibility of parole for nonhomicide crimes that he or she committed as a juvenile with the opportunity to obtain release on a showing of rehabilitation and maturity.