Filed 2/4/13; pub. order 3/4/13; reposted 7/18/13 to include mod. filed 3/4/13 prior to pub. order  (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JAVIER ENRIQUE PEREZ,<br><br>    Defendant and Appellant. | G046032<br><br>(Super. Ct. No. 08CF2172)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, James Edward Rogan, Judge.  Affirmed.

Kurt David Hermansen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton, Garrett Beaumont and Sean Rodriguez, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Javier Enrique Perez was convicted of one count of sexual penetration with a foreign object on nine-year-old Mario, and one count of committing a forcible lewd act on eight-year-old Andy. In plain English, he raped Mario with a toy light saber, broken at the tip, and forced Andy into participating in that rape. For these crimes he was sentenced to two consecutive terms of 15 years to life, for a total of 30 years to life. Perez was 16 years old when he committed the crimes. He presents four discrete challenges to the judgment.

(1)  He claims there was insufficient evidence of force or coercion against the eight-year old.

(2)  He claims his sentence is cruel and unusual as shown by recent federal and state high court case law, specifically *Miller v. Alabama* (2012) ___ U.S. ___ 132 S.Ct. 2455; *Graham v. Florida* (2010) ___ U.S. ___, 130 S.Ct 2011; and *People v. Caballero* (2012) 55 Cal.4th 262.

(3)  He claims that under *Miller*, *Graham* and *Caballero,* California's one-strike law is unconstitutional as applied to persons under age 18, because it left the trial court without any discretion to impose something less than 30 years to life.

(4)  He claims that under older state high court case law, specifically *People v. Dillon* (1983) 34 Cal.3d 441 and *In re Lynch* (1972) 8 Cal.3d 410, his sentence is grossly disproportionate to his offenses.[1]

---

[1]  Perez's opening and reply briefs conflate some of these four challenges. His briefs treat the impact of the recent *Miller* decision in the same heading as they treat the argument about the lack of discretion under the one-strike law, and treat the argument from traditional disproportionality under its own heading. The point is only worth mentioning because the reply brief asserts that the Attorney General has "forfeited" the arguments as to whether there was insufficient evidence of use of force against the nine-year old and whether the one-strike law is unconstititutional as applied to juveniles. Neither assertion is true, but the conflation in the opening brief of the argument may have led the Attorney General's office to treat those topics under the same heading.

We affirm. In brief:

(1) There was substantial evidence Perez used both force and intimidation against Andy, including forcibly grabbing him and pulling his pants down.

(2) *Miller*, *Graham* and *Caballero* do not apply to sentences which leave the possibility of a substantial life expectancy after prison, i.e., are not "de facto" LWOPs or "functional" LWOPs. Perez will be eligible for parole when he is 47.

(3) There is no rule of constitutional jurisprudence that *requires discretion* to reduce penalties when minors are sentenced for adult crimes to periods which still leave them a substantial life expectancy after release from prison.

(4) The punishment here fits the crimes, *and* the criminal. Perez showed extreme callousness. He already had a substantial criminal record before the assault on Mario, and when first interviewed by police, Perez expressed no remorse, but asserted Mario "liked it."

## I. FACTS

The facts do not warrant extended recounting, though we must reiterate the basic principle of appellate review that all conflicts in the evidence and reasonable inferences from it are drawn in favor of that version of events which most supports the judgment. (*People v. Jones* (1990) 51 Cal.3d 294, 314 ["On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence."]; see also *People v. Leyba* (1981) 29 Cal.3d 591, 596-597; *People v. Lawler* (1973) 9 Cal.3d 156, 160.)

Mario's mother worked as a janitor in Santa Ana, and sometime before 5 p.m. on July 16, 2008, dropped him off at the house of his friend, Andy. Andy's brother Oscar, age 22, was supposed to be baby-sitting the two boys, and Perez was Oscar's friend.

3

Perez's molestations of the two boys occurred in the dining area of the kitchen, and can be quickly summarized:

(1) Perez pulled down Mario's pants, and held him on the table so he could not get away. Perez soon told Andy to "get a plastic bag and some pink cream," and then Perez put Andy's hands in the bag," then he himself put lotion on the bag, then he "told [Andy] to put his hands in [Mario's butt]." Andy complied. Mario screamed. Perez laughed. Mario tried to get away but Perez held him.

(2) Perez next told Andy "to get the light saber," which had been a present given Andy on his birthday. The light saber had a broken edge at the very end. Mario described the toy as "a star wars stick that was broken from the tip." As Andy would later characterize Perez's words, "he made me" because Andy felt "scared of him." Perez put the light saber "inside [Mario's] butt."

(3) Perez then pulled Andy's pants down, and grabbed Andy with both hands, lifted him up while Mario was still bent over the table, and made Andy "rub [his] dick up against" Mario's "butt."

Moments later, Perez used a loud, raised voice to tell Andy not to tell his mother "what he did to me." Andy later told Mario, "I'm sorry . . . I had to do it."

Perez was convicted of four counts in all: (1) sexual penetration of the eight-year old with a foreign object by force (Pen. Code, § 289, subd, (a)(1)); (2) sexual penetration of a child under age 14 where he was more than seven years older than the victim (Pen. Code, § 269, subd. (a)(5)); committing a forcible lewd act upon the eight-year old, a child under the age of 14 (Pen. Code § 288, subd. (b)(1)); and (4) committing a forcible lewd act upon the nine-year old (also Pen. Code, § 288, subd. (b)(1).) For purposes of this appeal, counts 1 and 2 are academic. Perez was sentenced to 8 years on

4

count 1 and 15 years on count 2, but each of those sentences was stayed under Penal Code section 654.[2]

## II. DISCUSSION

### A. Substantial Evidence of Force

Perez was convicted, in count 4, of violating subdivision (b)(1) of section 288, which applies to forcible lewd acts on a child under 14. As the statute is structured, lewd acts against children are first described in subdivision (a),[3] then there is an additional penalty set out in subdivision (b) if an act described in subdivision (a) is accomplished by use of force, violence, duress, menace, or fear of immediate bodily injury on the victim *or* another person.[4]

From the statute's structure, Perez derives the following argument: Perez's act of lifting up Andy to rub him up against Mario was *itself* the lewd act under subdivision (a), so there is no evidence of force *different from*, or *greater than* that needed to accomplish the lifting and simulated sex; accordingly, his crime vis-à-vis Andy only comes within subdivision (a), which applies to lewd acts against children, and not within subdivision (b)(1), which applies to *forcible* lewd acts against children. (Cf. *People v. Soto* (2011) 51 Cal.4th 229, 242.)

The argument fails because there was substantial evidence of force and threat of force beyond what was necessary to accomplish the lewd act. Perez argues he

---

[2]    All further statutory references are to the Penal Code unless otherwise indicated.
[3]    "(a) Except as provided in subdivision (i), any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years."
[4]    "(b)(1) Any person who commits an act described in subdivision (a) by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, is guilty of a felony and shall be punished by imprisonment in the state prison for 5, 8, or 10 years."
    All further references to "subdivision (a)" or "subdivision (b)(1)" are to section 288 of the Penal Code.

5

"did not force Andy to do anything by threats of violence or physical force. For example, Javier did not force Andy's hand into Mario's butt; he just grabbed it and put it in slowly. [] Javier did not force Andy, he just instructed or verbally 'made' him do it. Javier got Andy's compliance by raising his voice and grabbing Andy."

This self-serving précis of the evidence against him pretty much defeats itself. And, given the evidence that Perez's hand was atop Andy's on the light saber when it was used on Mario, and Perez' concession that grabbing and holding a child will satisfy the requirements of subdivision (b)(1) (See, e. g., *People v. Babcock* (1993) 14 Cal.App.4th 383, 388), there seems little to say here.

When a sixteen-year-old yanks down the pants of one child and holds him down and then loudly orders another to commit lewd acts upon him, the implied threat of force is pretty clear. Given the unspoken but obvious choice of being an accomplice or a victim, Andy chose accomplice. But to analyze this incident solely in terms of picking Andy up and rubbing his body against Mario's and ignore the frightening assault on Mario that Andy had just participated in is to blind ourselves to reality and the meaning of the words "duress, menace, or fear" in the statute. The law neither requires nor countenances such myopic review.

B. *The Roper-Graham-Miller-Caballero Cases*

The issue of how long someone under the age of 18 may be sentenced to prison has been the subject of considerable judicial attention recently in the wake of *Miller*. To simplify analysis, on the next page we provide a chart encapsulating the Supreme Court cases culminating in *Miller* and the way the California Courts of Appeal have dealt with *Miller-Graham* type challenges (as of the end of 2012).

6

**The major Supreme Court cases (in order of doctrinal progression)**:

*Roper v. Simmons* (2005) 543 U.S. 551:  No death penalty for juvenile offenders under 18, regardless of crime.

*Graham v. Florida, supra,* ___ U.S. ___, 130 S.Ct 2011:  No LWOPs for non-homicide juvenile offenders.

*Miller v. Alabama, supra,* ___ U.S. ___ 132 S.Ct. 2455:  No mandatory LWOPs for homicide juvenile offenders.

*People v. Caballero, supra,* 55 Cal.4th 262:  110 to life for non-homicide juvenile offender (including attempted murder) is functional equivalent of LWOP, ergo cruel and unusual within *Graham*.

**Applications after *Miller* in the California Court of Appeal**:

| Case name | Age | Crime | Sentence | Result | Rationale |
| --- | --- | --- | --- | --- | --- |
| *Thomas*<br>12/11/12<br>211 Cal.App.4th 987 | 15 | 1st D. Murder (multiple counts in gang shooting) | 196 to life | Reversed | 196 years was functional equivalent of LWOP; reversed to give t/ct chance to use discretion in light of *Miller* |
| *Siackasorn*<br>12/7/12<br>211 Cal.App.4th 909 | 16 | Sp. Circ. Murder | LWOP | Reversed | Reversed to give t/ct the chance to reevaluate sentence under 190.5(b) w/o seeing LWOP as presumptive |
| *Argeta*<br>11/13/12<br>210 Cal.App.4th 1478 | 15 | Aid/abet Murder | minimum 75 | Reversed | AG conceded sentence was functional equivalent of LWOP |

**Notable California Appellate Cases Pre-Miller**

| Case name | Age | Crime | Sentence | Result | Rationale |
| --- | --- | --- | --- | --- | --- |
| *Mendez*<br>9/1/10<br>188 Cal.App.4th 47 | 16 | carjacking | 84 to life | Reversed | Did not reverse under theory reversal was required by *Graham*; rather, reversed b/c de facto LWOP for non-homicide disproportional under traditional test |
| *In re Nunez*<br>4/30/09<br>173 Cal.App.4th 709 | 14 | kidnapping for ransom | LWOP | Reversed | Sentence disproportionate under traditional disproportionality test; Justice Aronson successful anticipates *Graham* rule |
| *Em*<br>3/3/09<br>171 Cal.App.4th 964 | 15 yr, 9 mos. | felony murder (gang robbery) | 2 x 25 to life | Affirmed | Sentence not disproportionate to crime; Justice Moore dissented, emphasized young age and offender not being shooter |

These cases follow a remarkably consistent pattern.  There is a bright line between LWOPs and long sentences *with* eligibility for parole *if* there is some meaningful life expectancy left when the offender becomes eligible for parole.  We are aware of – and have been cited to – no case which has used the *Roper-Graham-Miller-*

*Caballero* line of jurisprudence to strike down as cruel and unusual any sentence against anyone under the age of 18 where the perpetrator still has substantial life expectancy left at the time of eligibility for parole.[5]

How *much* life expectancy must remain at the time of eligibility for parole of course remains a matter for future judicial development, but we can safely say that in the case before us there is plenty of time left for Perez to demonstrate, as the *Graham* court put it, "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." (*Graham, supra,* 130 S.Ct. at p. 2030 ["A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime."]) There is no dispute that, given all the credits already served by Perez, he will be eligible for parole when he reaches age 47. That is, by no stretch of the imagination can this case be called a "functional" or "de facto" LWOP, and therefore neither *Miller, Graham,* nor *Caballero* apply. And, of course, *Roper* was a death penalty case and does not apply for that reason.

## C. The One-Strike Law

Under Welfare and Institutions Code section 602, subdivision (b)(2)(G), the prosecutor had no discretion other than to try 16-year-old Perez in adult criminal court. And, under California's one-strike law, the trial judge had no discretion other than to impose the two 15-year-to-life sentences concurrently. (See § 667.61, subdivisions (b) [specifying 15-year-to-life penalty] and (i) [requiring consecutive sentences if separate

---

[5] There is one arguable outlier, the pre-*Miller* case of *People v. Blackwell* (2011) 202 Cal.App.4th 144, which affirmed an LWOP in the context of a felony murder for a 17-year, based on the lack of any abuse of discretion under section 190.5, subdivision (b) (establishing a "presumptive penalty of LWOP" when there is a special circumstance murder). (See *id.* at pp. 159-160.) We need not discuss in this opinion the degree to which *Blackwell* is in tension with *Siakasorn, supra,* 211 Cal.App.4th 909, which concluded LWOP should not be seen as the presumptive sentence. For one thing, the United States Supreme Court recently granted review in *Blackwell,* vacating its judgment. (See *Blackwell v. California* (Jan. 7, 2013) --- S.Ct. ----, 2013 WL 57076, 81 USLW 3364.) For another, even if *Blackwell* were completely reversed, it would not affect the case before us. This is not a section 190.5-presumption-of-LWOP case, but simply one involving a mandatorily long, but certainly not life, sentence.

victims].) However, as noted by Perez, the trial judge was personally reluctant to impose the two penalties consecutively, and "probably" would have run the penalties concurrently if he'd the authority to do so.[6]

Now, on appeal, beyond the simple application of the *Roper-Graham-Miller-Caballero* line, Perez argues that the rationale behind that line of cases – basically the diminished culpability of minors resulting from their immaturity – implies that California's one-strike law is unconstitutional as applied to minors because it deprives trial courts of the discretion to take into account what the *Miller* and *Roper* majorities described as the "what 'any parent knows'" factor. (*Miller, supra*, 132 S.Ct. at p. 2464, quoting *Roper v. Simmons, supra,* 543 U.S. at p. 569.)

The argument is unpersuasive because it overstates the scope of the *Roper-Graham-Miller-Caballero* line. The central focus in the majority opinions in the three federal high court cases was the fact the offenders had been exposed to the "harshest" available sentence. As *Mille*r summarized *Roper* and *Graham*: "By removing youth from the balance – by subjecting a juvenile to the same life-without-parole sentence applicable to an adult – these laws prohibit a sentencing authority from assessing whether the law's *harshest term of imprisonment* proportionately punishes a juvenile offender. That contravenes *Graham's* (and also *Roper's*) foundational principle: that imposition of a State's *most severe* penalties on juvenile offenders cannot proceed as though they were not children." (*Miller, supra*, 132 S.Ct. at p. 2465, italics added; see *Roper, supra*, 543

---

[6] Here are the trial judge's remarks on the point: "Mr. Carreon [trial defense counsel], if I may just speak candidly. I'm not quarreling with your position. Quite frankly, if the court had more discretion in this case it would appear to me, based upon the defendant's age – and not to minimize the incidents that were involved – but probably a 15-to-life sentence would be more appropriate; however, the question before the court is whether the court can make a federal constitutional finding that the will of the people as expressed through the legislation with respect to child molestation victims, whether it comes within the rubric of being a cruel and unusual punishment for constitutional purposes. I'm not prepared to make that finding. [¶] I do appreciate what you are saying. This court has sent a number of people to prison for first degree murder for less than the sentence, and I think that's the point you were trying to make and I'm mindful of it. But I just can't say that for federal and state constitutional purposes that the sentence amounts to something that would fit the paradigm in which you are suggesting."

U.S. at p. 568 ["Because the death penalty is the most severe punishment, the Eighth Amendment applies to it with special force."].)

But this is not an LWOP case. The state's most severe penalties are not at stake here. So, essentially, Perez's argument boils down to proposing a judicially-imposed rule of mandatory discretion, namely that no matter how heinous the crime – *or how mild the penalty otherwise imposed on adults* – the federal and state cruel and unusual punishment clauses require states to hold out some possibility of discretionary reduction in *that* penalty to take into account an offender's youth. Under the logic of Perez's position, California's one-strike law is unconstitutional as applied to him even if he were given two mandatory consecutive five-year terms and would be out of prison when he turned 26 – *if* those were the terms similarly situated adults would receive.

This seems to us a question properly addressed to the legislature and we need only note that, at the moment at least, no high court has articulated a rule that *all* minors who commit adult crimes and who would otherwise be sentenced as adults *must* have the opportunity for some discretionary reduction in their sentence by the trial court to account for their youth.[7] Perez's sentence, albeit long, still leaves plenty of time for him to be eligible for parole. It passes constitutional muster.

D. *Gross Disproportionality*

Finally, quite apart from *Miller*, *Graham*, *Roper* or *Caballero*, Perez asserts his sentence must be reduced under the older California Supreme Court jurisprudence of

---

[7]     About two weeks before oral argument, Perez's appellate counsel filed a request to file a *second* supplemental brief, this one attacking the constitutionality of section 707, subdivision (d) of the Welfare and Institutions Code. The statute gives prosecutors discretion to charge 16-year-olds in adult criminal court, but is subject to section 602, subdivision (b) of the Welfare and Institutions Code which, as we have just noted, *requires* prosecutors to charge 16-year-olds in adult criminal court who have been accused of, among other crimes, forcible lewd acts against children. His supplemental briefing provided no authority for the attack on Welfare and Institutions Code section 707 subdivision (d) other than the *Roper-Graham-Miller-Caballero* line of cases.

10

gross disproportionality, as shown primarily in *In re Lynch*, *supra*, 8 Cal.3d 410 and *Dillon, supra*, 34 Cal.3d 441.

Successful challenges based on the traditional *Lynch-Dillon* line are extremely rare. (See *People v. Weddle* (1991) 1 Cal.App.4th 1190, 1196 ["exquisite rarity"]; *In re Nunez, supra*, 173 Cal.App.4th at p. 725 ["rarest of the rare"].) It happened in *Nunez*, but that was a case where a 14-year old was given a full LWOP for a non-homicide crime, with this court successfully anticipating what the federal high court would soon hand down in *Miller*. It also happened in 2005, in *People v. Carmony* (2005) 127 Cal.App.4th 1066, but that was a case of a 25-year-to-life sentence for – certainly in comparison to the present case – the relatively trivial crime of failing to register as a sex offender within five working days of the offender's birthday. Likewise, *Lynch* also involved a life term for a crime that pales in comparison to the present one, second offense indecent exposure. And *Dillon* – while certainly not a minor crime in comparison to the offense here (in *Dillon* it was felony murder) – was a case that, like *Nunez*, successfully anticipated what the federal Supreme Court would later do. Specifically, in *Dillon* our high court was simply some 27 years ahead of *Graham* (no LWOPs for minors, even in homicide cases).

The present case certainly is not among those "exquisitely rare" cases which merit reversal on traditional disproportionality review. The offense was horrendous, particularly when we take into account the evidence of a broken tip on the light saber. Mario cried out to be released, and Perez laughed. Perez showed no remorse in the initial police interview and justified the attack on the nine-year old by insisting the boy enjoyed it. The probation report noted Perez already had compiled a criminal record: There were two incidents of auto theft at age 13, and at age 14, he shot a 13-year-old-victim with a BB gun. The sentence still leaves him with the chance for parole at age 47. And finally Perez presents no argument or data to the effect that other American

11

jurisdictions impose on 16-year olds significantly more lenient sentences than the ones given here.

DISPOSITION

The judgment is affirmed.

                                        BEDSWORTH, ACTING P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>JAVIER ENRIQUE PEREZ,<br><br>  Defendant and Appellant. | G046032<br><br>(Super. Ct. No. 08CF2172)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING; NO CHANGE IN JUDGMENT |

The opinion, filed February 4, 2013, is hereby modified in the following particulars:

1. On page 1 in the attorney listing, the name "Sean Rodriguez" should be spelled "Sean Rodriquez."

2. On page 6 of the slip opinion, delete the word "loudly" in the first sentence of the second complete paragraph.

3. The final sentence of footnote 5 on page 8 of the slip opinion (which currently reads: "This is not a section 190.5-presumption-of-LWOP case, but simply one involving a mandatorily long, but certainly not life, sentence.") should now read: "This is not a section 190.5-presumption-of-LWOP case, but simply one involving a mandatorily long, but certainly not mandatory life, sentence."

These modifications do not affect the judgment.

13

The petition for rehearing is DENIED.



BEDSWORTH, ACTING P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.


14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G046032 |
| v. | (Super. Ct. No. 08CF2172) |
| JAVIER ENRIQUE PEREZ, | ORDER GRANTING REQUEST FOR PUBLICATION |
| Defendant and Appellant. | |

       Respondent has requested that our opinion in this matter, filed February 4, 2013, be certified for publication. After reviewing the request, we have concluded the case indeed meets the requirements for publication. Pursuant to California Rules of Court, rule 8.1105(b), the request is GRANTED.

       The opinion is ordered published in the Official Reports.


       BEDSWORTH, ACTING P. J.

WE CONCUR:

IKOLA, J.


THOMPSON, J.