Filed 7/10/14  P. v. Hart CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>OTIS DANDRE HART,<br><br>    Defendant and Appellant. | G047156<br><br>(Super. Ct. No. 05CF3395)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING; NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed herein on June 25, 2014, be modified as follows:

On page 5, the second sentence of the first full paragraph, beginning "Therefore, it matters not whether" is deleted and the following sentence is inserted in its place:

Therefore, it matters not whether, as defendant asserts, the court could not have considered the necessary factors because *Miller* and *Caballero* were decided after his resentencing.

On page 7, the first sentence of the first full paragraph, beginning "Although the sentencing hearing" is deleted and the following sentence is inserted in its place:

Although the sentencing hearing was held before *Caballeros* and *Miller* were decided, the record shows the court knew the principles espoused by them.

This modification does not change the judgment.

Appellant's petition for rehearing is DENIED.


RYLAARSDAM, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.

Filed 6/25/14 (unmodified version)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>OTIS DANDRE HART,<br><br>    Defendant and Appellant. | G047156<br><br>(Super. Ct. No. 05CF3395)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Thomas M. Goethals, Judge.  Judgment affirmed, as modified.

Marleigh A. Kopas, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

This is the third appeal arising from defendant Otis Dandre Hart's conviction on numerous counts for conspiracy to commit robbery, robbery, street terrorism, and assault with a deadly weapon. In defendant's first appeal, we affirmed his conviction for these charges, but reversed for resentencing. (*People v. Hart* (Aug. 31, 2009, G039836) [nonpub. opn.] (*Hart 1*).) In the second appeal, we again reversed due to sentencing errors. (*People v. Hart* (Oct. 11, 2011, G043668) [nonpub. opn.] (*Hart 2*).)

Defendant appeals, arguing his sentence of 41 years on remand resulted from the court's nonapplication or misapplication of law regarding the sentencing of juveniles and its abuse of discretion, and constitutes cruel and unusual punishment. Additionally, he asserts Penal Code section 1170, subdivision (d)(2) (section 1170(d)(2); all further undesignated statutory references are to this code), allowing a juvenile offender serving a life sentence without parole (LWOP) to recall his or her sentence after serving 15 years, should be applied to a juvenile offender like himself serving a sentence less than LWOP. We reject these contentions.

Defendant further raises several sentencing errors, to which the Attorney General either agrees with or has no objection to. We concur with defendant's claims and order the minute order and the abstract of judgment be corrected accordingly. In all other respects, the judgment is affirmed. Because we do not remand the matter for resentencing, it is unnecessary to address defendant's claims double jeopardy precludes a greater sentence on remand and that the sentencing judge should be disqualified.

DISCUSSION

1. *Nonapplication or Misapplication of Law Governing the Sentencing of Juveniles*

Defendant contends the court failed to apply or misapplied law governing the sentencing of juvenile offenders. (See *Miller v. Alabama* (2012) 567 U.S. __ [132 S.Ct. 2455, 2469, 183 L.Ed.2d 407, 424] (*Miller*), *Graham v. Florida* (2010) 560 U.S. 48,

2

73, 79 [130 S.Ct 2011, 176 L.Ed.2d 825] (*Graham*), *Roper v. Simmons* (2005) 543 U.S. 551, 569-570 [125 S.Ct. 1183, 161 L.Ed.2d 1] (*Roper*), and *People v. Caballero* (2012) 55 Cal.4th 262, 268 (*Caballero*).) We disagree.

### a. Standard of Review

Although both parties agree a trial court's sentencing decision is generally reviewed for abuse of discretion (*People v. Sandoval* (2007) 41 Cal.4th 825, 847), defendant correctly asserts that an error of law, either in the law to be applied or the misapplication of law to a given set of facts, requires a de novo review. "'"The scope of discretion always reside in the particular law being applied, i.e., in the 'legal principles governing the subject of [the] action . . . .' Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an 'abuse' of discretion. [Citation.] . . . [¶] The legal principles that govern the subject of discretionary action vary greatly with context. . . . To determine if a court abused its discretion, we must thus consider "the legal principles and policies that should have guided the court's actions."'" (*People v. Tran* (2013) 215 Cal.App.4th 1207, 1218.)

### b. Miller, Graham, Roper, and Caballero

Defendant relies on *Miller*, *Graham*, *Roper*, and *Caballero*. But these cases are distinguishable because they involved juveniles sentenced to (1) the death penalty (*Roper*, 543 U.S. at p. 558); (2) LWOP (*Miller*, 567 U.S. at p. __ [132 S.Ct. at p. 2460, 183 L.Ed.2d at p. 414]; *Graham*, 560 U.S. at pp. 52-53; or (3) a term of years so long as to be the functional equivalent of LWOP (*Caballero*, 55 Cal.4th at p. 268).

As a panel of this court explained, "There is a bright line between LWOP's and long sentences *with* eligibility for parole *if* there is some meaningful life expectancy left when the offender becomes eligible for parole. We are aware of — and have been cited to — no case which has used the *Roper–Graham–Miller–Caballero* line of

3

jurisprudence to strike down as cruel and unusual any sentence against anyone under the age of 18 where the perpetrator still has substantial life expectancy left at the time of eligibility for parole. [¶] How *much* life expectancy must remain at the time of eligibility for parole of course remains a matter for future judicial development, but we can safely say that in the case before us there is plenty of time left for Perez to demonstrate, as the *Graham* court put it, 'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.' [Citation.] ['A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime.'] There is no dispute that, given all the credits already served by Perez, he will be eligible for parole when he reaches age 47. That is, by no stretch of the imagination can this case be called a 'functional' or 'de facto' LWOP, and therefore neither *Miller*, *Graham*, nor *Caballero* apply. And, of course, *Roper* was a death penalty case and does not apply for that reason." (*People v. Perez* (2013) 214 Cal.App.4th 49, 57-58, fn. omitted (*Perez*).)

Here, prior to January 1, 2014, and without considering his credit of 2,798 days, defendant would be 51 years old when he becomes eligible for parole. (§ 2933.1.) As that is only four years longer than in *Perez*, defendant still had significant life expectancy after prison and his sentence was not the equivalent of a "'functional' or 'de facto'" LWOP as a matter of law. (*Perez*, 214 Cal.App.4th at p. 58.)

Like the defendant in *Perez*, defendant will have ample time to obtain release based on demonstrated maturity and rehabilitation. And he will have the opportunity to do so even sooner now due to new legislation effective January 1, 2014, providing for a parole hearing for juvenile offenders like defendant in the 15th year of their incarceration. Newly enacted Senate Bill No. 260 (2013-2014 Reg. Sess.) (Bill 260), codified at section 3051, provides for a parole hearing in the 15th year of incarceration for juvenile offenders "convicted of a controlling offense that was committed before the person had attained 18 years of age and for which the sentence is a determinate

4

sentence . . . ." (§ 3051, subd. (b)(1) (§ 3051(b)(1)); see *People v. Gonzalez* (2014) 225 Cal.App.4th 1296, 1300-1301, 1309-1312 [50-years-to life not de facto LWOP given section 3051, subd. (b)(3) (section 3051(b)(3)] (*Gonzalez*).)

Defendant's sentence was thus was not the equivalent of a "'functional' or 'de facto'" LWOP as a matter of law (*Perez, supra*, 14 Cal.App.4th at p. 58) and the *Roper—Graham—Miller—Caballero* line of cases does not assist him. Therefore, it matters not whether, as defendant asserts, the court could not have considered the necessary factors because *Miller* and *Caballero* were decided after his resentencing, although we note defendant was resentenced three days *before Miller* was decided on June 25, 2012. (*Miller, supra*, __ U.S. __ [132 S.Ct. 2455, 183 L.Ed.2d 407].)


*c. Bill 260*

Under section 3051(b)(1), defendant would be eligible for a parole hearing at age 33, not taking into account his credit of 2,798 days (7.67 years). "That affords [him] a substantial parole period outside prison if he demonstrates reform, even under the earliest end-of-life projections." (*Gonzalez, supra*, 225 Cal.App.4th at p. 1309 [parole hearing at age 46 provides substantial period outside prison if reform demonstrated].)

Thus, even assuming defendant's sentence amounts to a de facto LWOP without due consideration of his youth and prospects for reform, section 3051 provides the relief he seeks, i.e., a "'realistic opportunity to obtain release.'" As recently noted by *Gonzalez,* section 3051 "provides for a parole hearing for juvenile offenders like [defendant] in the [1]5th year of their incarceration, usually within their life expectance by a matter of decades and therefore well within constitutional norms." (*Gonzalez, supra*, 225 Cal.App.4th at pp. 1300-1301.) Although *Gonzalez* involved the interpretation of section 3051(b)(3), and its provision for a parole hearing for a defendant sentenced to a life term of 25 years to life after 25 years of incarceration, its analysis applies equally well to section 3051(b)(1), which defendant acknowledges applies.

Moreover, the record demonstrates the court did consider the differences between juveniles and adults, although it did not specifically discuss all of the social and psychological factors making juveniles less culpable and more reformable than adults. The court took into account defense counsel's argument that "the law authorizes" "more leeway" in sentencing defendant due to his age and that the American Bar Association (ABA) had issued new guidelines outlining "all mitigating factors [in] sentencing a juvenile." It noted that "[a]lthough [defendant] was 16 . . . and . . . doesn't have a prior record, [both of] which [are] mitigating, it is impossible to ignore what he did."

When defense counsel pointed out a juvenile "does not process information the same way an adult does and the choice factor is not something that's necessarily there" and thus should "be held to a different standard," the court "g[o]t that." But it believed the age factor affects "a younger person's ability to perceive potential consequences. . . . [I]t doesn't have to do with volition. Sometimes it does, but" the court did not think it did here because videotapes of the robberies showed defendant apparently "having a good time." According to the court, "a 16-year-old with [defendant's] background [and] support . . . from a good family" would know the difference between right and wrong because his family would have taught him that. Defendant "had the ability to make choices in his life . . . [but] he chose to associate with these older more violent young men and to go along for the robbery."

The court found it somewhat mitigating that defendant might not have clearly appreciated that someone could be killed. At age 16, it probably did not "occur to him how really serious and dangerous this conduct was[]" because young people viewed life as "more kind of a game or a lark or something. It's just part of the gang lifestyle." At the same time, defendant's recent loss of a close friend in a drive-by shooting should have, in the court's opinion, caused him to mature faster than someone who had not suffered such a loss and made him "realize . . . riding around with a gun with a bunch of gang members and committing a long series of robberies . . . is dangerous."

6

Although the sentencing hearing was held before *Caballeros*, and only three days after, *Miller* was decided, the record shows the court knew the principle*s* espoused by *Graham*, *Miller* and *Caballero* even if it did not explicitly refer to them. These principles guided the court to reduce what it believed to be a mandatory sentence of about 80 years to 41 years.

Defendant argues no guarantee exists Bill 260 will still be "in effect by the time [he becomes] eligible for [a] hearing." To allay that concern, we will modify appellant's sentence to include a minimum parole eligibility date of 15 years so that in the event Bill 260 is later repealed, defendant will be guaranteed a parole hearing after 15 years. As in *Gonzalez*, a sentence guaranteeing a defendant a parole hearing after 15 years, when defendant is about 33 years old, is constitutional. (*Gonzalez*, *supra*, 225 Cal.App.4th at pp. 1300-1301, 1309.)

### d.  Abuse of Discretion

Given our conclusion in the prior section, we reject defendant's claim the court "failed to exercise [its] discretion in an informed manner." Nor has defendant shown the court erred in not mentioning during the sentencing hearing "the mitigating factor of voluntarily acknowledging wrongdoing at an early stage of the criminal process." That argument was made in defendant's resentencing brief, which the court indicated on the record it had read.

We are also not persuaded the court abused its discretion in sentencing defendant because it "failed to understand that neither [*People v.*] *Palacios* [(2001) 41 Cal.4th 720 (*Palacios*)] and section 12022.53 require consecutive terms for the underlying offenses with attached gun use enhancements." (Bold and capitalization omitted.) In *Hart 2*, *supra*, G043668, we concluded that "'a sentence of 42 years 4 months, or 35 years 8 months, or 20 years 8 months were all legally authorized sentences within legal aggregate limits.'" Among other things, these proposed sentences were

7

based on imposing 3-year terms on certain robbery counts and a 10-year consecutive gun use enhancement under section 12022.53, and then running those counts concurrently. (See *People v. Bui* (2011) 192 Cal.App.4th 1002, 1014, 1016 [*Palacios* does not bar staying of sentence on a count under section 654 and attached section 12022.53 enhancement and where sentence run concurrently on a count, attached section 12022.53 enhancement must also run concurrently].)

The court did repeatedly state it did not understand how *Hart 2* arrived at the proposed sentences. It believed *Palacios*, *supra,* 41 Cal.4th 720*,* and section 12022.53 required him to impose consecutive sentences for the offense and the gun use enhancement, resulting in a sentence of "around 80 years." But it understood *Hart 2* to indicate it could impose the mandatory consecutive sentences then run them concurrently and agreed to do that. The 41-year sentence included the imposition of 3-year terms on several robbery counts (counts 21, 22, 25, 26, 29, 32, 33, and 34) and 10-year terms for the attached gun use enhancements under section 12022.53, subdivisions (b) and (e)(1), run concurrently. No abuse its discretion occurred in light of *Hart 2*.

*2. Section 1170(d)(2)*

Senate Bill No. 9 (Bill 9) recently amended section 1170 by adding subdivision (d)(2), which permits defendants who were under age 18 at the time they committed the crime for which they were sentenced to LWOP who have served at least 15 years of their sentence to petition the court to recall their sentence and request resentencing. Defendant contends this statute should apply to juvenile nonhomicide offenders like himself who were sentenced to less than LWOP, given his rights to equal protection and to be free from cruel and unusual punishment. We disagree.

In interpreting Bill 9, we begin with the statutory language and give words their usual, ordinary meaning. (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1369.) Section 1170(d)(2)'s plain language indicates it applies to juvenile offenders "sentenced

8

to imprisonment for" [LWOP]" (§ 1170(d)(2)(A)(i)) and nothing in the statutory languages suggests the Legislature intended it to also apply to sentences that are not LWOP.  Because this language is clear and unambiguous, """"we presume the lawmakers meant what they said, and the plain meaning of the language governs'""" (*People v. Gutierrez*, at p. 1369), making it unnecessary to """"resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history.'""" (*Ibid.*)

We reject defendant's claim that interpreting Bill 9 in this manner violates his right to equal protection.  """"The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment."'  [Citation.]  'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.'  [Citations.]  This initial inquiry is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.'" (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.)  Here, defendant is not similarly situated to those sentenced to LWOP because he still had "meaningful life expectancy left when [he] becomes eligible for parole" (*Perez*, *supra*, 214 Cal.App.4th at p. 57) both before and after the enactment of section 3051, which defendant acknowledges filled in the gap left after Bill 9.

*3. Cruel and Unusual Punishment*

Defendant contends his 41-year sentence is cruel and unusual as applied to him.  We reject the Attorney General's claim defendant forfeited the issue by failing to assert it in the trial court.  The issue was raised in defendant's resentencing briefs.

We review whether a punishment is cruel or unusual and thus unconstitutional de novo, but view the underlying disputed facts in the light most favorable to the judgment.  (*People v. Rhodes* (2005) 126 Cal.App.4th 1374, 1390.)  "The

9

standard under the California Constitution . . . requires a showing that [defendant's] punishment is 'so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.' [Citation.] The showing must demonstrate the punishment is grossly disproportionate in light of (1) the nature of the offense and the defendant's personal characteristics, (2) punishment for more serious offenses, and (3) punishment for similar offenses in other jurisdictions. [Citation.] [¶] The federal standard is virtually identical: '[A] court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions."'" (*Gonzalez*, *supra*, 225 Cal.App.4th at p. 1314.)

As to the California standard, defendant claims that "although armed robberies and aggravated assault are serious crimes, no death or serious bodily injury occurred." This minimizes the extent of his crime spree in which he and fellow gang members robbed 10 establishments (17 victims) while armed with guns. Each time, defendant cleared the back of the establishment and forced the victims to the front of the building and twice personally carried a gun and threatened the victims with it, one time hitting, kicking, and pistol-whipping the victim. (*Hart 1*, *supra*, G039836.)

Regarding his nature, for the reasons earlier discussed, we reject his assertion the court failed to understand "juveniles are more susceptible to peer pressure," that "age matters and [that] reckless behavior in a juvenile like [defendant] usually diminishes with time." The court "g[o]t that" a juvenile does not process information in the same manner as an adult and did not believe defendant, at age 16, realized how dangerous the crimes were. It also realized defendant's vulnerability to peer pressure as a member of a gang. Contrary to defendant's claim, the court considered these factors, notwithstanding its discussion of "the crimes themselves and what *might* have happened," i.e., the possibility of death or serious harm to the victims.

10

Nor are we persuaded by defendant's contention he was in a vulnerable state of mind when he committed the crimes because his "best friend was murdered at a party only about a week before his crimes" and his motive in committing the crimes "was to obtain money for his friend's funeral expenses after a fundraiser he organized had not raised sufficient funds."  He also cites a report discussing his family history, "his father's absence from his life, and that [he] had witnessed several shootings and suffered four deaths since age eight[, including the loss of] a brother to illness a few years before the crimes at issue."  The jury rejected defendant's duress defense, finding him guilty of every count and enhancement.  (*Hart 1*, *supra*, G039836.)  And while the cited factors, as well as his age, may weigh in his favor, they do not outweigh the seriousness or numerousness of his crimes and victims (10 counts of conspiracy to commit robbery, 17 counts of second degree robbery, 10 counts of street terrorism, and 1 count of assault with a deadly weapon, with true findings he committed the conspiracy, robbery, and aggravated assault counts for the benefit of a criminal street gang and that a principal used a firearm in 15 of the offenses and that he personally used a gun in two of the counts).  (*Hart 1*, *supra*, G039836.)

As to the second factor, defendant contends his sentence "is arbitrary and grossly disproportionate because a juvenile convicted of homicide could be released earlier" under section 1170(d)(2), which allows juvenile defendants sentenced to LWOP and who have served at least 15 years of their sentence to petition the court to recall their sentence and request resentencing.  The claim lacks merit given the enactment of section 3051(b)(1), which deems a juvenile convicted of nonhomicide offenses "eligible for release on parole at a youth offender parole hearing . . . during his or her 15th year of incarceration, unless previously released pursuant to other statutory provisions."

Defendant asserts "section 3051 does not remedy this constitutional violation . . . [because the] sentence must be constitutional when imposed" . . . [and t]he special characteristics of a juvenile offender must be considered before imposing any

11

sentence." We have already concluded defendant's sentence was constitutional when imposed and that the court considered the necessary factors.

With regard to the final factor, defendant notes that in Canada, children who commit first degree murder at the same age as defendant "are eligible for parole after no more than 10 years" while child murderers in the United Kingdom "receive a presumptive sentence of 12 years, which may be adjusted depending upon aggravating or mitigating factors," with "[n]o juvenile convicted of murder . . . sentenced to more than 30 years." That may be but defendant does not specify whether that takes into account numerous offenses or enhancements that add to the base term for a particular crime.

Defendant also cites authority indicating international law proscribes LWOP sentences for juvenile offenders under age 18 and imprisoning them except as a last resort, while requiring juvenile criminal procedures account for age and promote rehabilitation. Defendant, however, was not sentenced to LWOP and the numerousness and seriousness of his crimes left the court little choice but to sentence defendant to prison. Section 3051 also both accounts for age and promotes rehabilitation by giving juvenile offenders "a meaningful opportunity to obtain release." (§ 3051, subd. (e).)

For the same reasons discussed above, defendant's sentence was not disproportionate in light of "'the gravity of the offense and the harshness of the penalty'" under the first prong of the federal standard. (*Gonzalez*, *supra*, 225 Cal.App.4th at p. 1314.) He does not address the two other prongs, i.e., "'sentences imposed on other criminals in the same jurisdiction'" or "'sentences imposed for commission of the *same* crime in other jurisdictions'" (*id*. at p. 1314, italics added), comparing only his sentence to those of child murderers in Canada and the United Kingdom.

Accordingly, defendant has not demonstrated his sentence was not cruel and unusual under either the California or the federal Constitution.

12

*4. Gang Enhancement*

Defendant argues and the Attorney General agrees, as do we, that the court erred in imposing a 10-year gang enhancement under section 182.22, subdivision (b)(1) with respect to count 4 because assault with a firearm (§ 245, subd. (a)(2)) is not a violent felony described in section 667.5, subdivision (c). Section 186.22, subdivision (b)(1) authorizes an additional consecutive term of five or 10 years "to the punishment prescribed for the felony . . . of which he . . . has been convicted," depending if the felony is a serious felony defined in section 1192.7 or section 667.5, respectively. "Because assault with a firearm is not listed as a violent felony in section 667.5, the trial court was required to impose only the five-year gang enhancement on count[ 4] . . . . [T]the judgment regarding . . . count[ 4] must be modified to strike the . . . 10-year gang enhancement [citation], and to reflect that a five-year gang enhancement [citation] has been imposed." (*People v. Sinclair* (2008) 166 Cal.App.4th 848, 856.)

*5. Correction of Resentencing Minute Order and Abstract of Judgment*

In *Hart 2*, *supra*, G043668, we directed the $1440 criminal conviction assessment fee be stricken because defendant was convicted before the effective date of Government Code section 70373. Although the court acknowledged our order during the most recent resentencing hearing, the minute order and amended abstract of judgment reflect otherwise. The Attorney General has no objection to defendant's request that these documents be corrected. Because the oral pronouncement controls where a discrepancy exists, we order the minute order and abstract of judgment be corrected to reflect that the criminal conviction assessment was stricken. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185-186; *People v. Zackery* (2007) 147 Cal.App.4th 380, 386.)

13

*6. Reduction of Security Fee*

At the resentencing hearing, except for the criminal assessment fee, the court reimposed "the same fees and assessments order," including a security fee (§ 1465.8) in the amount of $1,440, calculated at the rate of $30 for each of the 38 counts of defendant was convicted. The Attorney General agrees with defendant this was incorrect and that $20 per count should have been used to calculate the fee because that was the rate in effect at the time of defendant's convictions. We concur given that defendant was convicted in 2007, at which time the statute called for a $20 fee per count and the amendment increasing the fee to $30 did not become operative until July 2009. (Stats. 2009-2010, 4th Ex. Sess., ch. 22, § 29; *People v. Alford* (2007) 42 Cal.4th 749, 754 ["fee [applies] to all convictions after its operative date]".) The court security fee is ordered reduced from $1,140 to $760.

*7. Clerical Errors*

Defendant contends the amended abstract of judgment incorrectly: (1) lists count 30 as a violation of section 186.22, subdivision (a) but labels it "Robbery; second degree" rather than "street terrorism"; (2) reflects the sentence for robbery counts 21 and 34 as "consecutive 1/3 violent," and robbery counts 22, 25, 26, 29, 32, 33, and 37 as both "concurrent" and "consecutive 1/3 violent" when all were imposed concurrently; and (3) counts 32, 33, and 35 contain an X in the box under "Term (L, M, U)" instead of an "M" to show the court imposed the middle terms. The Attorney General does not object to the correction of these clerical errors. Because the abstract does not reflect the court's oral pronouncement of judgment, we order it be corrected. (*People v. Mitchell*, *supra*, 26 Cal.4th at pp. 185-186; *People v. Zackery*, *supra*, 147 Cal.App.4th at p. 386.)

14

DISPOSITION

Defendant's sentence is modified to reflect the following:

(1) He shall be entitled to a parole hearing after serving 15 years in prison;

(2) On count 4, the 10-year gang enhancement (§ 186.22, subd. (b)(1)(C)) is stricken and a 5-year gang enhancement (§ 186.22, subd. (b)(1)(B)) imposed;

(3) The reference to the $1,440.00 criminal conviction assessment fee is stricken (Gov. Code, § 70373);

(4) The court security fee (§ 1465.8) is reduced from $1,140 to $760; and

(5) The amended abstract of judgment is corrected to (a) label count 30 as "street terrorism" rather than "Robbery; second degree," (b) show only concurrent terms for counts 21, 22, 25, 26, 29, 32, 33, 34, and 37; and (c) replace the "X" in the box under "Term (L, M, U) with a "M."

The judgment is affirmed in all other respects. The trial court is directed to prepare an amended abstract of judgment reflecting these rulings and to forward a copy of the amended abstract of judgment to California Department of Corrections and Rehabilitation.

RYLAARSDAM, J.

WE CONCUR:

O'LEARY, P. J.

MOORE, J.

15