Filed 10/29/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re<br><br>　　JOSE ARMANDO ALATRISTE,<br><br>　　on<br><br>　　Habeas Corpus. | B248072<br><br>(Los Angeles County<br>　Super. Ct. No. BA344055) |
| In re<br><br>　　JOSEPH BONILLA,<br><br>　　on<br><br>　　Habeas Corpus. | B248199<br><br>(Los Angeles County<br>　Super. Ct. No. BA320049) |

ORIGINAL PROCEEDINGS. Petitions for writ of habeas corpus denied.

Law Offices of Allen G. Weinberg and Allen G. Weinberg for Petitioner Jose Armando Alatriste.

Law Offices of Allen G. Weinberg and Derek K. Kowata for Petitioner Joseph Bonilla.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Lawrence M. Daniels, Timothy M. Weiner, and David F. Glassman, Deputy Attorneys General, for Respondent.

_____

# INTRODUCTION

These cases concern a recurring issue in juvenile sentencing. A juvenile is charged with committing one or more serious or violent felonies, with various sentence enhancement allegations. The juvenile is tried as an adult, convicted, and sentenced to a lengthy term that, while authorized by statute, is the functional equivalent of a life sentence because the defendant has no meaningful chance of being released on parole in his or her lifetime. The United States Supreme Court has held that a sentence of life in prison without the possibility of parole, when imposed upon a defendant who was under the age of 18 at the time of his or her crime, violates the Eighth Amendment prohibition against cruel and unusual punishment. (*Miller v. Alabama* (2012) ___ U.S. ___, [132 S.Ct. 2455] (*Miller*) [prohibiting mandatory sentence of life in prison without the possibility of parole for defendant who committed capital murder at age 14]; *Graham v. Florida* (2010) 560 U.S. 48, [130 S.Ct. 2011] (*Graham*) [prohibiting life without parole sentence for juvenile who did not commit homicide].) In *People v. Caballero* (2012) 55 Cal.4th 262 (*Caballero*), the California Supreme Court, citing *Graham,* held that a sentence of 110 years to life for a juvenile convicted of attempted murder violated the Eighth Amendment because the defendant's parole eligibility date would fall outside his natural life expectancy and was therefore the "functional equivalent" of a life without parole sentence.

Petitioners Jose Armando Alatriste and Joseph Bonilla committed homicides as juveniles and were sentenced to lengthy state prison terms (77 years to life and 50 years to life, respectively). We affirmed the convictions of both petitioners (Bonilla in March 2009 and Alatriste in December 2011).

In April 2013, Alatriste and Bonilla each filed a habeas corpus petition, alleging that his sentence constituted cruel and unusual punishment in violation of the Eighth Amendment. We summarily denied both petitions.

On July 17, 2013, the California Supreme Court granted each petitioner's petition for review. In each case, the court directed us to issue an order to the Director of the

2

Department of Corrections and Rehabilitation to show cause why the petitioner was not entitled to relief based on his claim that his sentence constituted cruel and unusual punishment in violation of the Eighth Amendment because it offered no meaningful opportunity for release on parole, and why *Miller* should not be accorded retroactive effect.

At its 2013-2014 session, the Legislature enacted Senate Bill No. 260 (SB 260), which amends the California Penal Code to address the sentencing concerns expressed in *Miller, Graham* and *Caballero*.[1]  SB 260, which will take effect January 1, 2014, provides a mechanism -- a "juvenile opportunity parole hearing" -- that affords juvenile defendants such as petitioners a meaningful opportunity for release on parole at a time far sooner than their lengthy sentences might otherwise allow.  SB 260 also renders moot the issue of whether *Miller* should apply retroactively to petitioners' cases because it applies to "any prisoner who was under 18 years of age at the time of his or her controlling offense."  (SB 260 (2013-2014 Reg. Sess.) Sept. 16, 2013, new § 3051, subd. (a).)

## FACTS

### *Alatriste*

On the evening of July 9, 2007, Alatriste, a 16-year-old member of the East Los Angeles Trece gang, fired an estimated 16 rounds from a .40-caliber semiautomatic weapon into a group containing rival gang members.  One of the group, Primo Garcia, was shot in the face and neck.  Garcia suffered permanent brain injury and was able to breathe only with the assistance of a ventilator.  In February 2008, while living in a long-term care facility, Garcia's breathing became obstructed.  He died from complications following emergency surgery.

A jury convicted Alatriste of one count of second degree murder, one count of attempted murder, and one count of assault with a semiautomatic firearm.  The jury also found true allegations that Alatriste personally used and discharged a handgun, causing

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

3

great bodily injury or death, and committed the crimes for the benefit of a criminal street gang. Alatriste was sentenced to a total of 77 years to life in state prison. We affirmed the conviction. (*People v. Alatriste* (Dec. 6, 2011, B223020) [nonpub. opn.].)

## *Bonilla*

Late in the evening of August 12, 2005, Bonilla, 16 years old at the time, was among a group of eight people riding in Erik Perez's Lincoln Aviator. Some of the passengers were from three affiliated Antelope Valley gangs. After engaging in some nefarious activities (such as knocking out the windows of a rival gang member's car), the group entered a pool hall to use the restroom. As the group entered, one of the pool players commented that "there was some bald fools in the pool hall." On the way out, the males in the Perez group precipitated a pool-hall-wide brawl by challenging R.A. for his gang affiliation, then punching and jumping on him. R.A.'s friends tried to pull the Perez group off R.A. During the melee, Bonilla pulled from his waistband a .45-caliber Ruger handgun loaded with hollow point bullets, then shot and killed Alfredo Briano.

A jury convicted Bonilla of first degree murder and found true special allegations that he discharged a firearm proximately causing death, and that the crime was committed for the benefit of a criminal street gang. Bonilla was sentenced to 50 years to life in state prison (25 years to life for the murder and 25 years to life for discharging the firearm). For the gang enhancement, the court imposed a 15-year minimum term for parole eligibility. On March 19, 2009, we affirmed Bonilla's conviction but remanded the case for correction of the abstract of judgment. (*People v. Bonilla* (Mar. 19, 2009, B205363) [nonpub. opn.].)

## DISCUSSION

"The Eighth Amendment's prohibition of cruel and unusual punishment 'guarantees individuals the right not to be subjected to excessive sanctions.' [Citation.] That right . . . 'flows from the basic "precept of justice that punishment for crime should be graduated and proportioned"' to both the offender and the offense." (*Miller, supra,*

4

132 S.Ct. at p. 2463, citing *Roper v. Simmons* (2005) 543 U.S. 551, 560, 125 S.Ct. 1183, 161 L.Ed.2d 1 [barring capital punishment for children].) *Miller, Roper* and *Graham* express the Supreme Court's view that "children are constitutionally different from adults for purposes of sentencing. Because juveniles have diminished culpability and greater prospects for reform, . . . 'they are less deserving of the most severe punishments.' [Citation.] [*Roper* and *Graham*] relied on three significant gaps between juveniles and adults. First, children have a '"lack of maturity and an underdeveloped sense of responsibility,"' leading to recklessness, impulsivity, and heedless risk-taking. *Roper,* 543 U.S., at 569, 125 S.Ct. 1183. Second, children 'are more vulnerable . . . to negative influences and outside pressures,' including from their family and peers; they have limited 'contro[l] over their own environment' and lack the ability to extricate themselves from horrific, crime-producing settings. *Ibid.* And third, a child's character is not as 'well formed' as an adult's; his traits are 'less fixed' and his actions less likely to be 'evidence of irretrievabl[e] deprav[ity].' *Id.,* at 570, 125 S.Ct. 1183." (*Miller*, *supra*, 132 S.Ct. at p. 2464.)

Citing *Graham*, the court in *Caballero* remanded the case for resentencing and directed the sentencing court to "consider all mitigating circumstances attendant in the juvenile's crime and life, including but not limited to his or her chronological age at the time of the crime, whether the juvenile offender was a direct perpetrator or an aider and abettor, and his or her physical and mental development, so that it can impose a time when the juvenile offender will be able to seek parole from the parole board. The Board of Parole Hearings will then determine whether the juvenile offender must be released from prison 'based on demonstrated maturity and rehabilitation.'" (*Caballero*, *supra*, 55 Cal.4th at pp. 268–269.) The court did not give any further guidance, because "every case will be different." (*Id.* at p. 269.)

In practice, the directives of *Graham*, *Miller* and *Caballero* have proved challenging for trial courts. The Legislature has enacted statutes designed to ensure lengthy prison sentences for defendants who commit serious and/or violent felonies. These sentencing statutes, particularly those requiring trial courts to impose certain

5

sentence enhancements, limit a trial court's sentencing options. When sentencing a juvenile defendant, a trial court, while accommodating this statutory framework, must consider objective factors such as the defendant's age, level of participation in the crime and, to a certain extent, life experiences. However, the court must also evaluate subjective factors, such as the defendant's "physical and mental development," (*Caballero*, *supra*, 55 Cal.4th at p. 269) in order to determine when the defendant might attain a sufficient level of maturity to warrant release on parole. The court must then fashion a sentence that gives the defendant a meaningful opportunity for release on parole during his or her lifetime, and must utilize actuarial skills to determine how long the defendant's lifetime might be.[2]

### SB 260

As *Graham*, *Miller* and *Caballero* tell us, a state prison sentence that does not provide a juvenile defendant with a meaningful opportunity to obtain release on parole within his or her lifetime constitutes cruel and unusual punishment under the Eighth Amendment. SB 260 was a direct response to those cases.

Section 1 of SB 260 states in pertinent part: "The Legislature finds and declares that, as stated by the United States Supreme Court in *Miller v. Alabama* (2012) 183 L.Ed.2d 407, 'only a relatively small proportion of adolescents' who engage in illegal activity 'develop entrenched patterns of problem behavior,' and that 'developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds,' including 'parts of the brain involved in behavior control.' The Legislature recognizes that youthfulness both lessens a juvenile's moral culpability and enhances the prospect that, as a youth matures into an adult and neurological development occurs, these individuals can become contributing members of society. The

---

[2]    Petitioners cite actuarial data published by the Centers for Disease Control and Prevention. Alatriste estimates his life expectancy at "somewhere from 64 to 76 years of age, without accounting for the impact of his incarceration." Using the same data, Bonilla calculates his life expectancy at "somewhere from 62 to 76 years of age, without accounting for his incarceration.

6

purpose of this act is to establish a parole eligibility mechanism that provides a person serving a sentence for crimes that he or she committed as a juvenile the opportunity to obtain release when he or she has shown that he or she has been rehabilitated and gained maturity, in accordance with the decision of the California Supreme Court in *People v. Caballero* (2012) 55 Cal.4th 262 and the decisions of the United States Supreme Court in *Graham v. Florida* (2010) 560 U.S. 48, and *Miller v. Alabama* (2012) 183 L.Ed.2d 407. . . ."[3] (Legis. Counsel's Dig., SB 260 (2013-2014 Reg. Sess.) § 1, p. 2.)

New section 3051, subdivision (a)(1), provides that "any prisoner who was under 18 years of age at the time of his or her controlling offense" shall be afforded a "youth offender parole hearing." Juvenile offenders with determinate sentences of any length shall receive a hearing during the 15th year of incarceration. (New § 3051, subd. (b)(l).) Juvenile offenders sentenced to life terms of less than 25 years to life shall receive a hearing during the 20th year of incarceration. (New § 3051, subd. (b)(2).) Juveniles sentenced to an indeterminate base term of 25 years to life will receive a hearing during the 25th year of incarceration. (New § 3051, subd. (b)(3).) The youth offender parole hearing "shall provide for a meaningful opportunity to obtain release." (New § 3051, subd. (e).) Any psychological evaluations and risk assessments used by the Board of Parole Hearings "shall be administered by licensed psychologists employed by the board and shall take into consideration the diminished culpability of juveniles as compared to that of adults, the hallmark features of youth, and any subsequent growth and increased maturity of the individual." (New § 3051, subd. (f)(1).)

The new procedures created by SB 260 insure that prisoners such as petitioners, who were juveniles at the time they committed their life crimes, will have the benefit of

---

[3] SB 260 exempts from its provisions "inmates who were sentenced pursuant to the Three Strikes law or Jessica's Law, or sentenced to life in prison without the possibility of parole." SB 260 is likewise inapplicable to "an individual to whom the bill would otherwise apply, but who, subsequent to attaining 18 years of age, commits an additional crime for which malice aforethought is a necessary element of the crime or for which the individual is sentenced to life in prison." (Legis. Counsel's Dig., SB 260 (2013-2014 Reg. Sess.) p. 2.)

the type of evaluation compelled by *Miller*, *Graham* and *Caballero* at a point in time that gives them a meaningful opportunity to "obtain release based on demonstrated maturity and rehabilitation." (*Graham*, *supra*, 560 U.S. at p. ___, [130 S.Ct. at p. 2030].)

### *Petitioners are not entitled to new sentencing hearings.*

Both petitioners contend that SB 260 notwithstanding, they are entitled to new sentencing hearings because the courts that sentenced them were unable to consider the "individualized sentencing factors mandated by *Miller*," and therefore their sentences were unconstitutional at the outset. Each petitioner contends he is entitled to a new sentencing hearing at which the trial court can consider the *Miller* factors and resentence petitioners accordingly.

*Graham*, *Miller* and *Caballero* merely hold that a juvenile defendant may not be incarcerated for life or its functional equivalent without some meaningful opportunity for release on parole during his or her lifetime. These cases do not require that the time when that meaningful opportunity might occur should be determined at the time of sentencing.

While a case-by-case approach to this issue may seem fair on its face, as a practical matter it has resulted in inconsistent sentences among trial courts and, consequently, unfairness to juvenile defendants. SB 260 levels the playing field. It insures that juvenile offenders such as petitioners will be afforded a meaningful opportunity for release on parole after a set number of years based on fixed criteria applied to each prisoner individually.

The petitioners in these cases used firearms to commit senseless crimes on behalf of criminal street gangs. We do not see any constitutional infirmity in requiring petitioners to serve 20 or 25 years before they have the opportunity to demonstrate that they have been rehabilitated and have attained sufficient maturity to become contributing members of society.

***Requests for judicial notice.***

Both petitioners have requested judicial notice of certain documents filed in federal court on the issue of whether *Miller* should be applied retroactively. This issue is moot because the Legislature made SB 260 applicable to "any prisoner who was under the age of 18 years of age at the time of his or her controlling offense." (SB 260, new § 3051, subd. (a). The requests for judicial notice are therefore denied.

## **DISPOSITION**

The habeas corpus petitions are denied.

**CERTIFIED FOR PUBLICATION.**

_____, P. J.
              BOREN

We concur:

_____, J.
ASHMANN-GERST

_____, J.
FERNS, J.*

_____
\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.