Filed 10/13/15  P. v. McGuire CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B259710 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA115410) |
| v. | |
| ANTHONY MCGUIRE, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Kelvin D. Filer, Judge.  Reversed.

Patricia A. Scott, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Susan Sullivan Pithey and David Zarmi, Deputy Attorneys General, for Plaintiff and Respondent.

_____

This appeal comes before us for a second time. Following a jury trial, Anthony McGuire was convicted of gang-related murder and attempted murders. We reverse and remand for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

McGuire was 17 years old at the time he committed the crimes in 2009.[1] It was undisputed at trial that he and codefendant Lance M. Taylor were gang members and that McGuire fired a gun at unarmed bystanders who did no more than call out to females walking on the street. One of the bystanders was killed.

A jury convicted McGuire of one count of first degree murder (Pen. Code, § 187, subd. (a))[2] and two counts of attempted premeditated murder (§§ 664/187, subd. (a)). The jury found that in all three offenses he personally used and intentionally discharged a firearm within the meaning of section 12022.53, subdivisions (b) through (e), and that the offenses were committed for the benefit of a criminal street gang (§ 186.22) In March 2011, McGuire was sentenced to an aggregate state prison term of 90 years to life.[3]

Among the issues raised in his first appeal, McGuire contended his sentence constituted cruel and unusual punishment under the Eighth Amendment because he was only 17 years old at the time of the crimes. We reversed the sentence and remanded for resentencing after concluding the trial court had failed to consider the factors identified in *Miller v. Alabama* (2012) 567 U.S. __ [132 S.Ct. 2455, 183 L.Ed.2d 407] (*Miller*) and

---

[1]    McGuire's birthdate is July 9, 1992. At the time the crimes were committed (August 19, 2009) he would have been 17 years and 1 month.

[2]    Statutory references are to the Penal Code, unless otherwise indicated.

[3]    McGuire was tried jointly with Taylor, who was found guilty of one count of first degree murder and two counts of attempted premeditated murder. The jury found that in all three offenses, a principal personally used and intentionally discharged a firearm within the meaning of section 12022.53, subdivisions (b) through (e) and they were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(c)). Taylor was sentenced to an aggregate state prison term of 82 years to life.

*People v. Caballero* (2012) 55 Cal.4th 262 (*Caballero*) in imposing sentence. (*People v. McGuire* (July 15, 2013, B232593) [nonpub. opn.].)

At the resentencing hearing on remand, the trial court indicated it had reviewed the relevant cases, among them *Miller* and *Caballero*, the probation officer's report and counsels' sentencing memoranda.[4] Prior to imposing sentence for murder, count 1, the court observed that McGuire "was 17 years old at the time of the offense, not 15 or 16. His level of involvement was high and extremely connected, involved. And based upon the jury's findings as I recall them, exhibited some leadership on the part of Mr. McGuire in carrying out these three offenses. Specifically, it was found he personally used a handgun and fired more than one time. There were numerous shorts [sic] towards the direction of numerous victims. There is nothing that indicated he has any sort of physical, mental or emotional health problems. He is not a small young man. He did complete at least enough schooling to get through 11th grade of high school." The court noted that McGuire "was not on any type of drugs or medications" at the time of the offense. The trial court also considered the fact that section 3051 would provide McGuire with an opportunity to seek parole in 25 years. The trial court then sentenced McGuire to an aggregate state prison term of 50 years to life: a term of 25 years to life for murder (count 1), plus a term of 25 years to life for the firearm-use enhancement.

With respect to the attempted murders, counts 2 and 3, the court stated, "looking over my notes and what happened as the events occurred reflecting these convictions, all of them were committed close in time and place, and I'm finding now that did reflect a single period of abhorrent behavior on the part of Mr. McGuire, I think it's clear his main objective was to facilitate, instigate and continue the gang warfare that was going on at that time between the two gangs involved. And again, making sure that the record indicates that I'm cognizant he was a juvenile and I'm considering the factors of his age and level of involvement and whether there was physical and mental development, I'm

---

[4] Both parties urged the court to delay sentencing until the California Supreme Court decided the relevant issues pending before it. (See *infra*.) The court declined the proffered stipulation.

3

considering that as well in determining that these offenses as to count 2 and 3 should run concurrent. And I think this will provide a meaningful opportunity for [McGuire] to obtain his release based on any subsequent rehabilitation. Granted, it will be late in his life, but at least there will be some opportunity. And again, the court has considered the social and psychological factors that make juveniles less culpable than adults. That is why I decided to run the time concurrent in counts 2 and 3 with the 50 years in count 1." The court then imposed two concurrent terms of 25 years to life on Count 1 plus 25 years to life for the firearm-use enhancement with a concurrent sentence of life, with a fifteen year minimum parole eligibility plus 25 years to life for firearm enhancement on each of Count 2 and Count 3. McGuire timely appealed, again contending his sentence violated the Eighth Amendment prohibition on cruel and unusual punishment.

## DISCUSSION

*1. Relevant Legal Principles*

In *Miller*, *supra*, 132 S.Ct. at p. 2460, the United States Supreme Court held the Eighth Amendment prohibits the imposition of a mandatory sentence of life without the possibility of parole (LWOP) for a juvenile who commits murder. (*Miller*, *supra*, 132 S.Ct. at p. 2460.) While not imposing a categorical ban, the Court explained that "[G]iven all we have said in *Roper* [*v. Simmons* (2005) 543 U.S. 551], *Graham* [*v. Florida* (2010) 560 U.S. 48], and this decision about children's diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon. That is especially so because of the great difficulty we noted in *Roper* and *Graham* of distinguishing at this early age between 'the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.' [Citations.] Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." (*Id.* at p. 2469.)

4

The *Miller* Court set forth five categories of factors which the trial court is to consider in determining whether an LWOP sentence is warranted: (1) the juvenile offender's "chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences;" (2) "the family and home environment that surrounds [the juvenile]—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional;" (3) "the circumstances of the homicide offense, including the extent of [the juvenile's] participation in the conduct and the way familial and peer pressures may have affected him," including whether substance abuse influenced the juvenile's criminal conduct; (4) whether the juvenile "might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys;" and (5) whether there is a possibility of rehabilitation, for which the absence or existence of a criminal history is relevant. (*Id.* at pp. 2468-2469.)

In *Graham v. Florida* (2010) 560 U.S. 48, 82 [130 S.Ct. 2011, 176 L.Ed.2d 825] (*Graham*) , the United States Supreme Court held a categorical ban on sentences of life without parole for juvenile offenders applies to all nonhomicide cases including a term of years sentence that is the functional equivalent of an LWOP sentence.

In *Caballero*, *supra*, 55 Cal.4th at p. 268, the California Supreme Court applied the principals of *Miller* and *Graham* to hold that an aggregate determinate sentence of 110 years for a 16-year-old, who was convicted of three gang-related attempted murders, was the functional equivalent of an LWOP sentence, and violated *Graham's* requirement that "a state must provide a [nonhomicide] juvenile offender 'with some realistic opportunity to obtain release' from prison during his or her expected lifetime." (*Caballero*, at p. 268, quoting *Graham*, 560 U.S. at p. 82.)

Finally, in *People v. Gutierrez* (2014) 58 Cal.4th 1354, the California Supreme Court revisited the issue, addressing the question of whether section 190.5 establishes a presumption in favor of life without parole. In holding that it does not, the Court returned to *Miller*, finding, "At the core of *Miller's* rationale is the proposition-articulated in

5

*Roper*, amplified in *Graham*, and further elaborated in *Miller* itself-that constitutionally significant differences between children and adults 'diminish the penological justifications for imposing the harshest sentences on juvenile offenders.'" (*Id.* at p. 1379.) The *Gutierrez* court held "that the trial court must consider all relevant evidence bearing on the distinctive attributes of youth' discussed in *Miller*. (*Id*. at p. 1390.)

### 2. *The Trial Court's Imposition of a 50 Years to Life Sentence*

McGuire contends, in selecting a term of 50 years to life, the trial court (1) failed to consider the relevant *Miller* factors in sentencing McGuire as a juvenile, and (2) imposed a sentence which, at the time of sentencing, was the functional equivalent of LWOP in violation of the Eighth Amendment. The People argue (1) the trial court considered and properly applied the *Miller* factors in making its sentencing decision, (2) the sentence did not amount to LWOP, and (3) McGuire's challenge to the sentence is moot under section 3051.[5]

### a. *The Court Failed to Consider All of the Miller Factors*

We agree with McGuire's first contention that the trial court did not follow our mandate to reconsider its sentence in light of *Miller* and *Caballero*. The court's comments showed it imposed an aggregate term of 50 years to life after considering only

---

[5] The *Caballero* Court encouraged the Legislature "to enact legislation establishing a parole eligibility mechanism that provides a defendant serving a de facto life sentence without possibility of parole for nonhomicide crimes that he or she committed as a juvenile with the opportunity to obtain release on a showing of rehabilitation and maturity." (*Caballero*, *supra,* 55 Cal.4th at p. 269, fn. 5.)

In response, the Legislature enacted section 3051, which states, "[a] person who was convicted of a controlling offense that was committed before the person had attained 18 years of age and for which the sentence is a life term of 25 years to life shall be eligible for release on parole by the board during his or her 25th year of incarceration at a youth offender parole hearing, unless previously released or entitled to an earlier parole consideration hearing pursuant to other statutory provisions." (§ 3051, subd. (b)(3).) That hearing must provide a "meaningful opportunity for release." (§ 3051, subd. (e).)

McGuire's chronological age, role in the offenses, size, lack of health issues, educational status, and lack of substance abuse. While the court considered the unrelated factors of health and physical size, the court did not appear to consider the "hallmark features" of McGuire's age, his competency to deal with police, his home environment, and whether his history demonstrated a possibility of rehabilitation, all as required by *Miller*.[6]

### b. *We Need Not Determine if the Sentence was LWOP*

With respect to McGuire's second contention, the California Supreme Court has granted review to determine whether a sentence of 50 years to life for a defendant convicted of a murder committed as a juvenile is the functional equivalent of an LWOP sentence. (*In re Alatriste*, review granted Feb. 19, 2014, S214652, and *In re Bonilla*, review granted Feb. 19, 2014, S214960.)

We need not decide this issue in this case, as the sentence imposed by the trial court, as set forth above, did not comply with the order on remand. We note, however, that the record shows McGuire was 19 years old when he was originally sentenced in 2011. We take judicial notice that the life expectancy for a Black male age 19 is approximately 54 years. (National Vital Statistics Reports, United States Life Tables, 2010 (Nov. 6, 2014) at p. 29, available at http://www.cdc.gov/nchs/data/nvsr/nvsr63/nvsr63_07.pdf [as of September 8, 2015].) Thus, McGuire's expected year of death is approximately 2065 while his earliest parole eligibility date is 2060. Pending decision of the Supreme Court, we do not believe that this minimal 5 year potential difference removes the necessity of considering the *Miller* factors, as the functional equivalent of LWOP.

---

[6]     The court did indicate, without any elaboration, that it considered the "factors that make juveniles less culpable than adults," but only in relation to its decision to make the sentences on Count 2 and 3 concurrent.

*3.       Section 3051 Does Not Moot This Case*

Finally, the People argue, as they did at the trial court, that section 3051 provides the meaningful opportunity for release required in juvenile sentencing.[7] The trial court relied on this provision in its sentencing decision, as set forth above. We conclude this was error.

First, section 3051, by its terms, excludes individuals who are serving LWOP sentences. (3051, subd. (h).) Thus, if the sentence, as imposed by the trial court, remains the functional equivalent of LWOP, no relief would be available to appellant.

Moreover, while the LWOP issue remains pending, we believe the Supreme Court's decision on a closely related provision provides critical guidance on this issue. Based on that authority, we conclude that section 3051 does not remove the mandate to consider the hallmark features of youth at the time of sentencing.

Section 1170, subdivision (d)(2), enacted in 2012, provides a "recall" procedure for a juvenile LWOP sentence, after a period of 15 years. (§ 1170, subd. (d)(2)(A)(i) ["When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has served at least 15 years of that sentence, the defendant may submit to the sentencing court a petition for recall and resentencing."].)

In *Gutierrez* the California Supreme Court rejected the Attorney General's argument that the enactment of section 1170, subdivision (d)(2) resolved the constitutional problems arising from the fact that California courts had interpreted section 190.5, subdivision (b) as creating a presumption for LWOP sentences for juveniles. The *Gutierrez* Court opined that: "the potential for relief under section 1170(d)(2) does not eliminate the serious constitutional doubts arising from a presumption in favor of life without parole under section 190.5(b) . . . ." (*People v. Gutierrez, supra,* 58 Cal.4th at p. 1385.)

---

[7]       The Court will also decide in *Alatriste, supra*, S214652, and *Bonilla, supra,* S214960 whether, as the People argue, section 3051 effectively moots any claim that such a sentence amounts to cruel and unusual punishment.

8

In our view, both section 3051 and section 1170, subdivision (d)(2), fall short of what *Miller* requires. First of all, *Miller* makes clear the special considerations attendant to youth are to be considered at the *time of sentencing*. As the *Gutierrez* Court observed: "*Miller* repeatedly made clear that the sentencing authority must address this risk of error by considering how children are different and how those differences counsel against a sentence of life without parole '*before imposing a particular penalty*.'" (*People v. Gutierrez, supra,* 58 Cal.4th at p. 1387, quoting *Miller v. Alabama, supra,* 567 U.S. at p. __, 132 S.Ct. at p. 2471, *italics added;* see *id.* at pp. __, __, 132 S.Ct. at pp. 2469, 2475.)

In addition, both provisions' petitioning processes—15 years after sentencing in the case of section 1170, subdivision (d)(2) and 25 years in section 3051—are inconsistent with the Supreme Court's analysis in *Miller*. Allowing the deferral of constitutionally mandated sentencing factors for a minimum of a decade and a half after conviction rather than requiring consideration of those facts before incarceration effectively makes *Miller*'s mandate irrelevant to our sentencing courts. Nothing in *Miller* indicates that the Supreme Court envisioned any such deferral of constitutionally required sentencing considerations; that deferral stands in opposition to the Court's observation that such consideration will result in the harshest of sentences being "uncommon."

### 4. *Joint and Several Liability for Victim Restitution*

In our earlier opinion, we noted the record showed the trial court intended to make the liability for victim restitution to be joint and several between McGuire and codefendant Taylor and directed the trial court to modify the judgment accordingly. (*People v. Blackburn* (1999) 72 Cal.App.4th 1520, 1534-1535.) On remand, we again direct the trial court to do so.

### 5. *Modification of Criminal Conviction Assessment*

Similarly, the trial court did not correct the amount that McGuire owes under Government Code, section 70373 as we previously ordered. Therefore on remand the

court must impose a $30 criminal conviction assessment for each count, for a total of $90, rather than the $40 for each count, for a total of $120, that the trial court erroneously imposed on McGuire when he was originally sentenced.

## DISPOSITION

The judgment is reversed and the matter remanded for resentencing consistent with this opinion.

ZELON, Acting P. J.

We concur:

SEGAL, J.

BECKLOFF, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.