Filed 1/16/25  P. v. Denem CA2/3
Review denied 5/14/25: reposted with Supreme Court order and statement

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROLLIN DENEM,<br><br>    Defendant and Appellant. | B333016<br><br>(Los Angeles County<br>Super. Ct. No. BA240172) |

APPEAL from an order of the Superior Court of Los Angeles County, Ronald S. Coen, Judge.  Affirmed.

William L. Heyman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Blythe Leszkay and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Rollin Denem of special circumstance murder committed when he was 18 years old. A court sentenced him to life without parole. Years later, Denem moved for a hearing under *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*), which held that a defendant may develop a record for an eventual Penal Code[1] section 3051 youth offender parole hearing. The trial court denied Denem's request for a *Franklin* hearing because he was ineligible for a youth offender parole hearing. Denem appeals, contending that section 3051 violates equal protection because it excludes young adult offenders sentenced to life without parole and that his sentence is cruel or unusual punishment under our California Constitution. We reject his contentions.

## BACKGROUND

In 1998, Denem and accomplices participated in an armed robbery during which an accomplice shot and killed a security guard. (See generally *People v. Denem* (Feb. 21, 2023, B318106) [nonpub. opn.].)[2] A jury convicted Denem of murder committed while he was engaged in the commission of a felony, robbery (§§ 187, subd. (a), 190.2, subd. (a)(17); count 1) and of robbery (§ 211; counts 2 & 3) with true findings on principal gun use (§ 12022.53, subds. (c), (d) & (e)(1)) and gang (§ 186.22, subd.

---

[1]    All further undesignated statutory references are to the Penal Code.

[2]    We grant Denem's request for judicial notice of that opinion. (Evid. Code, § 451, subd. (a).)

2

(b)(1))[3] allegations.  A court sentenced Denem to life without parole for the murder plus 25 years to life.

In 2023, Denem moved for a *Franklin* hearing.  In his motion, Denem acknowledged that because he was 18 years old when he committed his crimes and was sentenced to life without parole, he was ineligible for a section 3051 youth offender parole hearing.  However, he argued that excluding youth offenders from eligibility for relief violated equal protection guarantees because they are similarly situated to youth offenders sentenced to de facto life without parole and to juveniles sentenced to life without parole.  Denem also argued that his sentence was cruel or unusual under the California Constitution, article I, section 17.

On June 14, 2023, the trial court denied Denem's motion.  The trial court found that Denem was ineligible for section 3051 relief and that denying him relief did not violate equal protection.  The trial court did not address Denem's cruel or unusual punishment argument.

## DISCUSSION

I.     Equal protection

Denem was 18 years old when he participated in the murder for which he was sentenced to life without parole; therefore, he was ineligible for a youth offender parole hearing under section 3051, subdivision (h), and not entitled to a *Franklin* hearing.  He nonetheless argues that section 3051 violates equal protection by (1) treating young adult offenders

---

[3]     The jury found the gang allegations true as to counts 1 and 3 only.

sentenced to life without parole for special circumstance murder differently from young adult offenders serving parole-eligible life sentences for other crimes, (2) excluding young adult offenders sentenced to life without parole from eligibility while including juvenile offenders sentenced to life without parole, and (3) excluding youth offenders sentenced for special circumstance murder under section 190.2, subdivision (d), while including those convicted of nonspecial circumstance first degree felony murder for the same specified felony offenses per the exact same standard under section 189, subdivision (e)(3). As we now explain, our California Supreme Court rejected his first argument in *People v. Hardin* (2024) 15 Cal.5th 834 (*Hardin*), we follow other Courts of Appeal rejecting the second argument, and we reject his third argument because Denem's jury found the special circumstance allegation true under subdivision (a)(17) of section 190.2, not subdivision (d).

A. *Section 3051 and* Hardin

Over the past two decades, courts have recognized that juveniles (persons under 18) are constitutionally different from adults for sentencing purposes because of juveniles' diminished culpability and greater prospects for reform. (See generally *Miller v. Alabama* (2012) 567 U.S. 460, 471.) Accordingly, the Eighth Amendment prohibits imposing the death penalty on juveniles (*Roper v. Simmons* (2005) 543 U.S. 551), life without parole sentences on juveniles who commit nonhomicide offenses (*Graham v. Florida* (2010) 560 U.S. 48), mandatory life without parole sentences on juveniles (*Miller*, at p. 489), de facto life without parole sentences on juvenile nonhomicide offenders (*People v. Caballero* (2012) 55 Cal.4th 262), and a sentence of 50

4

years to life for juvenile nonhomicide offenders (*People v. Contreras* (2018) 4 Cal.5th 349, 356).

In light of the judicial recognition of juveniles' lessened culpability and greater prospects for reform, our Legislature enacted section 3051. Section 3051 requires the Board of Parole Hearings to conduct a "youth offender parole hearing" at specified times during the youth's incarceration. Generally, persons who were younger than 26 years old when they committed their controlling offense are eligible for a youth offender parole hearing if they were sentenced to a determinate term or a life term with the possibility of parole. (§ 3051, subd. (b).) Persons sentenced to life without parole are entitled to a hearing if they were younger than 18 years old when they committed the controlling offense. (§ 3051, subd. (b)(4).) However, persons sentenced to life without parole who committed their controlling offense when they were 18 or older are ineligible for a youth offender parole hearing.[4] (§ 3051, subd. (h).) Further, persons who are eligible for a youth offender parole hearing must have a sufficient opportunity to make a record of information relevant to that eventual hearing. (*Franklin*, *supra*, 63 Cal.4th at p. 284.)

While this appeal was pending, our California Supreme Court issued *Hardin*, *supra*, 15 Cal.5th 834, which considered whether section 3051 violates equal protection. *Hardin*, at page 850, held that when "plaintiffs challenge laws drawing distinctions between identifiable groups or classes of persons, on

---

[4] Similarly, persons sentenced under the Three Strikes or One Strike laws and offenders who, after attaining 26 years of age, commit an additional crime for which malice aforethought is an element are ineligible for a youth offender parole hearing. (§ 3051, subd. (h).)

5

the basis that the distinctions drawn are inconsistent with equal protection, courts no longer need to ask at the threshold whether the two groups are similarly situated for purposes of the law in question. The only pertinent inquiry is whether the challenged difference in treatment is adequately justified under the applicable standard of review," which is rational basis review. Under rational basis review, courts "consider whether the challenged classification ultimately bears a rational relationship to a legitimate state purpose." (*People v. Chatman* (2018) 4 Cal.5th 277, 289.)

*Hardin* then turned to whether there was a rational basis to exclude persons sentenced to life without parole for a crime committed when they were 18 or older from a youth offender parole hearing. The court found that while the Legislature's primary purpose in extending section 3051[5] to young adult offenders was to give them the opportunity to obtain release based on growth and rehabilitation, the Legislature balanced this purpose with other concerns about culpability and the appropriate punishment for certain very serious crimes. (*Hardin*, *supra*, 15 Cal.5th at p. 854.) In "designing section 3051, the Legislature consciously drew lines that altered the parole component of offenders' sentences based not only on the age of the offender (and thus the offender's amenability to rehabilitation) but also on the offense and sentence imposed. The lines the Legislature drew necessarily reflect a set of legislative judgments about the nature of punishment that is appropriate for the crime." (*Id.* at p. 855.)

---

[5] As originally enacted, only juveniles were eligible for youth offender parole hearings, but, over the years, the age of eligibility has been raised to 22 and then to 25. (See generally *Hardin*, *supra*, 15 Cal.5th at pp. 845–846.)

6

*Hardin* rejected the argument that there is no rational basis to distinguish between youthful offenders sentenced to life without parole for special circumstance murder and youthful offenders sentenced either to functionally equivalent life without parole sentences or to indeterminate life terms for first degree murder.  (*Hardin, supra*, 15 Cal.5th at p. 858; cf. *People v. Williams* (2024) 17 Cal.5th 99 [excluding defendants sentenced under One Strike law from § 3051 relief does not violate equal protection].)  The court observed that "legions of decisions" hold that "special circumstance murder is sufficiently serious and morally culpable as to justify imposing the most severe sanctions available under the law, up to and including death."  (*Hardin*, at p. 859.)  While the court did not "foreclose the possibility of other challenges to the distinctions drawn by the special circumstances statute based on a more robust record or a more focused as-applied inquiry, Hardin has not carried his burden to demonstrate that legislative reliance on the special circumstance murder statute in section 3051, subdivision (h) is categorically irrational."  (*Id.* at p. 862.)  The court concluded that Hardin had not shown that the "Legislature's decision to expand youth offender parole hearings to most young adult offenders, while excluding Hardin and others similarly situated, violates equal protection under a rational basis standard."  (*Id.* at p. 866.)

B.      Hardin *precludes Denem's first claim*

Denem acknowledges that *Hardin* rejected his first contention, that treating young adult offenders sentenced to life without parole for special circumstance murder differently from young adult offenders serving parole-eligible life sentences for other crimes violates equal protection.  We are bound by *Hardin*. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

## C. *A rational basis exists to distinguish between young adults and juveniles sentenced to life without parole*

Denem continues to pursue his second contention, that excluding young adult offenders sentenced to life without parole from eligibility while including juvenile offenders sentenced to life without parole violates equal protection. Although *Hardin* declined to address this issue, other appellate courts have rejected it, finding that age provides a rational basis for the Legislature to distinguish between offenders with the same life without parole sentence. (See, e.g., *People v. Mason* (2024) 105 Cal.App.5th 411; *People v. Hardin* (2022) 84 Cal.App.5th 273, 285–286, review granted Jan. 11, 2023, S277487, reversed on other grounds by *Hardin*, *supra*, 15 Cal.5th 834; *People v. Sands* (2021) 70 Cal.App.5th 193; *People v. Jackson* (2021) 61 Cal.App.5th 189, 196–198; *People v. Acosta* (2021) 60 Cal.App.5th 769, 779 (*Acosta*).) Those cases recognize that *Roper* and its progeny apply to juveniles, and not to young adult offenders. Thus, a life without parole sentence may violate the Eighth Amendment for juvenile offenders, but "the same sentence does not violate the Eighth Amendment when imposed on an adult, even an adult under the age of 26." (*Sands*, at p. 204.) Our Legislature therefore could "rationally decide to remedy unconstitutional sentences [of juveniles] but go no further." (*Ibid.*; accord, *Acosta*, at pp. 779–780 [Legislature declined to include young adult offenders sentenced to life without parole presumably because 8th Amend. jurisprudence didn't compel it].)

## D. People v. Briscoe *is distinguishable*

Denem's final argument why section 3051 violates equal protection is based on *People v. Briscoe* (2024) 105 Cal.App.5th 479 (*Briscoe*). The defendant in that case was convicted of first degree murder, robbery, and burglary with a true finding on a

8

special circumstance allegation under section 190.2, subdivision (d), and was sentenced to life without parole. (*Briscoe*, at p. 485.) The defendant was 21 years old when he committed his crimes. (*Ibid.*) He was therefore ineligible for a section 3051 youth offender parole hearing based on his age and sentence.

On appeal, the defendant claimed that section 3051 violates equal protection "by excluding youth offenders sentenced for special circumstance murder under section 190.2, subdivision (d)— which applies to nonkiller participants in specified felony offenses during which a murder occurred—while including those convicted of nonspecial circumstance first degree felony murder for the same specified felony offenses per the exact same standard under section 189, subdivision (e)(3)."[6] (*Briscoe*, *supra*, 105 Cal.App.5th at p. 485.) *Briscoe*, at page 491, noted that the Legislature amended section 189 to "limit felony-murder liability," in part by "directly incorporating the section 190.2, subdivision (d) standard into the definition of first degree felony murder under section 189, subdivision (e)(3)."[7]

---

[6] Section 190.2, subdivision (d), provides: "Notwithstanding subdivision (c), every person, not the actual killer, who, with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of a felony enumerated in paragraph (17) of subdivision (a) which results in the death of some person or persons, and who is found guilty of murder in the first degree therefor, shall be punished by death or imprisonment in the state prison for life without the possibility of parole if a special circumstance enumerated in paragraph (17) of subdivision (a) has been found to be true under Section 190.4."

[7] Section 189, subdivision (e) provides: "A participant in the perpetration or attempted perpetration of a felony listed in

The court then observed that *Hardin* had found that the culpability associated with life-without-parole offenses provides a rational basis to exclude youth offenders sentenced to life without parole from section 3051 relief. (*Briscoe*, *supra*, 105 Cal.App.5th at p. 492.) However, "this logic falls apart when applied to the particular special circumstance and the facts at issue here. Section 190.2, subdivision (d) describes the exact same circumstances and conduct that is now necessary to support a conviction for first degree felony murder under section 189, subdivision (e)(3). The disparate treatment of offenders who committed murder per these identical provisions during the same underlying felonies cannot reflect any difference in culpability." (*Ibid.*) *Briscoe*, at page 495, therefore found that no rational reason existed "for section 3051 to exclude section 190.2, subdivision (d) offenders from a parole opportunity provided to section 189, subdivision (e)(3) offenders convicted under the exact same standard."

*Briscoe* is distinguishable. That case concerned a special circumstance allegation under section 190.2, subdivision (d). In contrast, Denem's jury found true a special circumstance allegation under section 190.2, subdivision (a)(17). Subdivision (a)(17) provides for a penalty of death or life without parole if the murder "was committed while the defendant was engaged in, or was an accomplice in, the commission of, attempted commission of, or the immediate flight after committing, or attempting to commit" specified felonies, including robbery. Thus, while section

subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: . . . (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

190.2, subdivision (d), expressly applies only to nonkillers, that is not necessarily so with section 190.2, subdivision (a)(17). Subdivision (a)(17) applies to actual killers *and* nonkillers who commit murder while intending to commit a felony such as robbery.  (See generally CALCRIM No. 730.)

II.     Cruel or unusual punishment

Denem alternatively argues that evolving standards of decency, as exemplified by the expansion of section 3051 to include persons who committed their controlling offense at the age of 25 and younger, have made his life without parole sentence cruel or unusual punishment under the California Constitution.[8] But, as we have said, section 3051 has its genesis in cases concerning *juveniles*.  That is, *Miller v. Alabama*, *supra*, 567 U.S. 460 prohibited mandatory life without parole terms for juveniles. It did not apply to young adults like Denem who were 18 or older when they committed their crime.  (See *Acosta*, *supra*, 60 Cal.App.5th at p. 782.)  Our Supreme Court and numerous Courts of Appeal have refused to extend *Miller*, as well as *Graham* and *Roper*, to young adults 18 years of age or older. (See, e.g., *People v. Flores* (2020) 9 Cal.5th 371, 429–430 [declining to extend *Roper* to 18-to-20-year-olds]; *People v. Powell* (2018) 6 Cal.5th 136, 191 [death penalty for 18 year old with "intellectual shortcomings" does not violate federal and state Constitutions]; *People v. Gamache* (2010) 48 Cal.4th 347, 407 ["lengthy confinement under a sentence of death does not constitute cruel and unusual punishment" or violate federal and state Constitutions]; *In re Williams* (2020) 57 Cal.App.5th 427, 437–438 [life without parole for 21-year old offender not grossly

---

[8]     Denem does not argue on appeal that his sentence violates the federal Constitution.

11

disproportionate to his culpability]; see *People v. Argeta* (2012) 210 Cal.App.4th 1478, 1482.)  Thus, as *Argeta* observed, a line has been drawn about at what age it is cruel or unusual punishment to impose a life without parole sentence.  That line currently stands at 17 years of age (i.e., those persons who are 17 and younger are considered juveniles).  Denem was 18 years old and not a juvenile when he committed the murders.  Accordingly, his life without parole sentence does not constitute cruel or unusual punishment.

## DISPOSITION

The order denying Rollin Denem's motion for a *Franklin* hearing is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

EGERTON, J.

ADAMS, J.

12

Court of Appeal, Second Appellate District, Division Three - No. B333016

**S289464**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

_____

_____

THE PEOPLE, Plaintiff and Respondent,

v.

ROLLIN DENEM, Defendant and Appellant.

_____

_____

The petition for review is denied.


Liu, Kruger, and Evans, JJ., are of the opinion the petition should be granted.


(See Dissenting Statement by Justice Liu.)


_____/s/_____
*Chief Justice*

PEOPLE v. DENEM

S289464


Dissenting Statement by Justice Liu


On November 3, 1998, less than five months after his eighteenth birthday, defendant Rollin Denem and seven others robbed a food market in Compton. During the robbery, one of his co-defendants shot and killed a security guard. Denem was arrested in 2001 and charged with first-degree murder with a felony-murder special circumstance. In 2004, he was convicted and sentenced to life without the possibility of parole (LWOP), the mandatory punishment for his crime under Penal Code section 190.2, subdivision (a)(17)(A).

Youth offenders below age 26 are generally eligible for a youth offender parole hearing pursuant to Penal Code section 3051. But subdivision (h) of that statute excludes individuals sentenced to LWOP. Denem challenges his LWOP sentence and his exclusion from a youth offender parole hearing as cruel or unusual punishment under article I, section 17 of the California Constitution. The Court of Appeal rejected this claim, reasoning that LWOP is not cruel or unusual when applied to an 18-year-old because "a line has been drawn about at what age it is cruel or unusual punishment to impose a life without parole sentence," and "[t]hat line currently stands at 17 years of age."

To be clear, the question here is not whether an LWOP sentence *may* lawfully be imposed on an 18-year-old. The issue is whether the state constitution permits a *mandatory* LWOP sentence for an 18-year-old without any individualized

1

consideration. Such consideration here would include the trial court's observation that Denem may have been susceptible to peer pressure: "Without each other, maybe they don't have the guts to do it alone. . . . It takes a group, and the group is what's dangerous. . . . The group will do something that the individuals themselves will not do alone." Further, the fact that Denem "wore a disguise of a hat and a curly wig" during the robbery (*People v. Denem* (Feb. 21, 2023, B318106) [nonpub. opn.] review den., Apr. 26, 2023) may suggest that his crime was "devoid of any sophistication" (*People v. Hardin* (2024) 15 Cal.5th 834, 896 (dis. opn. of Liu, J.)).

Further, in an individualized inquiry, it would be relevant that Denem had a difficult childhood. His parents abandoned him "at a very young age." He lived with "domestic violence, drugs, and alcohol in the household," where "physical, verbal, and emotional abuse were present." And yet, as the probation report indicated, in the years between the crime and his arrest, Denem worked full-time, took classes, and volunteered in his community, including "teaching computer classes to kids and senior citizens." After his arrest, he maintained a good record in custody. And in 2002, numerous community leaders noted Denem's leadership skills and positive contributions to the south Los Angeles community.

Denem stands convicted of participating in a tragic and lethal crime. But "[a]s neuroscience shows and 'any parent knows,' [1] juveniles and younger adults lack maturity and a sense of responsibility, [2] they are vulnerable to negative influences over which they have limited control, and [3] their character is transitory and developing. (*Roper v. Simmons* (2005) 543 U.S. 551, [569–570].) 'Neuroscientists now know that all three of the "general differences between juveniles under 18

and adults" recognized by *Roper* are present in people older than 18.' ([*In re Pers. Restraint of Monschke* (Wn. 2021) 482 P.3d 276,] 286; accord, [*Commonwealth v. Mattis* (Mass. 2024) 224 N.E.3d 410,] 421 ['the scientific record strongly supports the contention that emerging adults have the same core neurological characteristics as juveniles have'].)" (*People v. Powell* (Feb. 23, 2024, A167066) [nonpub. opn.], review den. June 12, 2024, S284418 (dis. stmt. of Evans, J.); see *ibid.* [noting that Massachusetts, Michigan and Washington have interpreted similar state constitutional protections against cruel or unusual punishment to prohibit a mandatory LWOP sentence for someone of Denem's age, and that 22 states and the District of Columbia do not mandate LWOP under any circumstance].)

Our Legislature, too, has "repeatedly recognized that 'youthfulness both lessens a juvenile's moral culpability and enhances the prospect that, as a youth matures into an adult and neurological development occurs, these individuals can become contributing members of society' (Stats. 2013, ch. 312, § 1), and that brain development affecting judgment and decisionmaking 'continues beyond adolescence and into the mid-20's'." (*Hardin, supra*, 15 Cal.5th at p. 866 (dis. opn. of Liu, J.).)

The court that sentenced Denem was prohibited from considering any of this context, and under current law, none of these considerations, including any rehabilitation he has demonstrated while incarcerated, will be presented to a parole board. If he is condemned to die in prison, he will endure nearly all of his adult life behind bars. In light of the changing scientific and legal landscape (*Powell, supra*, review den. (dis. stmt. of Evans, J.), the mandatory sentence imposed on Denem, with no individualized consideration, seems in serious tension

with the state constitutional prohibition on cruel or unusual punishment and warrants our review.

Yet this court's inaction does not necessarily spell the end of the road for Denem, who has been incarcerated for over two decades and now, at age 44, may well be able to show that he has significantly matured since age 18. His hope for "a meaningful chance at life beyond prison walls" (*Hardin, supra,* 15 Cal.5th at p. 897 (dis. opn. of Liu, J.)) may hinge on the Legislature's enactment of Senate Bill No. 672, the Youth Rehabilitation and Opportunity Act, which would strike the LWOP exclusion from Penal Code section 3051 and thereby grant young offenders like Denem the possibility of parole after their twenty-fifth year of incarceration.

**LIU, J.**

**I Concur:**
**EVANS, J.**