Filed 7/14/25  P. v. Sanders CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B336620 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA059122) |
| v. | |
| RICKY SANDERS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kelvin D. Filer, Judge.  Reversed and remanded.

Jerome McGuire, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven E. Mercer, Noah P. Hill, and Christopher G. Sanchez, Deputy Attorneys General for Plaintiff and Respondent.

———————————

In 2002, a jury found Ricky Sanders guilty of first degree murder. (Pen. Code,[1] § 187, subd. (a).) The jury found true the allegation that Sanders personally used and intentionally discharged a firearm in the commission of the offense. (§ 12022.53, subd. (c).) The trial court sentenced Sanders to 25 years to life in prison, plus 20 years for the firearm enhancement. Sanders was 16 years old at the time he committed the offense.

In May 2023, Sanders petitioned for recall and resentencing under section 1170, subdivision (d)(1), and *People v. Heard* (2022) 83 Cal.App.5th 608 (*Heard*). Section 1170, subdivision (d)(1), permits juvenile offenders sentenced to life without the possibility of parole (LWOP) to petition for recall and resentencing under certain circumstances. In *Heard*, the Court of Appeal, Fourth District, Division One, held that equal protection requires that juvenile offenders sentenced to aggregate sentences that are the functional equivalent of LWOP be permitted to petition for recall and resentencing under section 1170, subdivision (d)(1)(A).

Following a hearing on Sanders's section 1170, subdivision (d)(1) petition, the trial court ruled that Sanders's sentence was not the functional equivalent of LWOP because Sanders would be afforded a parole eligibility hearing in February 2029 when he was 40 years old and would be eligible for elderly parole in February 2039 when he was 50 years old. Additionally, "[i]n light of the conduct credit that will undoubtedly occur," the court found Sanders's parole eligibility date would not occur near or beyond his life expectancy. Finally, "even if he served the full minimum of 45 years, [Sanders] will be 61 years old and will still have an

---

[1] All further statutory references are to the Penal Code.

opportunity to reintegrate into society. [Sanders's] sentence provided a realistic opportunity to obtain release from prison during his expected lifetime. To wit, he did not receive a de facto LWOP."

On appeal, Sanders contends that his sentence of 45 years to life was the functional equivalent of LWOP. We agree. We reverse the trial court's order and remand for the court to determine whether Sanders is otherwise eligible for recall and resentencing under section 1170, subdivision (d)(1).

## DISCUSSION

### A.    *Legal Backdrop*

#### 1.    <u>Eighth Amendment Precedent</u>

In *Graham v. Florida* (2010) 560 U.S. 48, 74–75 (*Graham*), the United States Supreme Court held that it is a violation of the Eighth Amendment's ban on cruel and unusual punishment to sentence a non-homicide juvenile offender to LWOP. The *Graham* court explained that "developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds. . . . [P]arts of the brain involved in behavior control continue to mature through late adolescence. [Citations.] Juveniles are more capable of change than are adults, and their actions are less likely to be evidence of 'irretrievably depraved character' than are the actions of adults. [Citation.] It remains true that '[f]rom a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character

3

deficiencies will be reformed.' [Citation.]" (*Id*. at p. 68.) *Graham* held that "[a] State is not required to guarantee eventual freedom to a juvenile offender convicted of a non[-]homicide crime. What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." (*Id*. at p. 75.)

In *Miller v. Alabama* (2012) 567 U.S. 460, 489 (*Miller*), the United States Supreme Court extended Graham's reasoning to cases involving juvenile homicide offenders. *Miller* did not prohibit the imposition of LWOP on juvenile homicide offenders, but instead held that the states could not mandate an LWOP sentence in those circumstances; sentencing courts must be given the discretion to impose a lesser sentence. (*Id*. at p. 480.) *Miller* "reaffirmed that 'the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes.' (*Id*. at p. 472.) It explained that 'mandatory penalty schemes . . . remov[e] youth from the balance' and 'prohibit a sentencing authority from assessing whether the law's harshest term of imprisonment proportionately punishes a juvenile offender. That contravenes *Graham's* . . . foundational principle: that imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children.' (*Id*. at p. 474.)" (*Heard*, *supra*, 83 Cal.App.5th at p. 616.)

In *People v. Caballero* (2012) 55 Cal.4th 262, 265 (*Caballero*), the California Supreme Court extended *Graham's* holding to juvenile non-homicide offenders who are sentenced to an aggregate term of years that constitute the functional equivalent of LWOP. There, the defendant was convicted of three counts of attempted murder, which he committed when he was 16

4

years old.  (*Ibid.*)  The jury additionally found true associated gang enhancements (§ 186.22, subd. (b)(1)(C)), and enhancements for personal use of a firearm (§ 12022.53, subds. (c) & (d)) and personal infliction of great bodily harm and personal infliction of great bodily harm as to one victim (§ 12022.7).  (*Ibid.*)  The trial court sentenced the defendant to a total term of 110 years to life.  (*Ibid.*)  The *Caballero* court concluded that "sentencing a juvenile offender for a non[-]homicide offense to a term of years with a parole eligibility date that falls outside the juvenile offender's natural life expectancy constitutes cruel and unusual punishment in violation of the Eighth Amendment."  (*Id.* at p. 268.)

## 2.     Section 1170

Senate Bill No. 9 (2011–2012 Reg. Sess.) (Senate Bill 9) was introduced in the California Legislature following the United States Supreme Court's decision in *Graham*, but prior to the decisions in *Miller* and *Caballero*.  (*Heard, supra*, 83 Cal.App.5th at p. 617.)  "Effective January 1, 2013, Senate Bill [9] . . . added former subdivision (d)(2) to section 1170.  (See Stats. 2012, ch. 828, § 1.)"  (*Ibid.*)  The legislation " 'was inspired by concerns regarding sentences of life without parole for juvenile offenders.'  [Citation.]  It created 'a procedural mechanism for resentencing of defendants who were under the age of 18 at the time of the commission of their offenses and who were given [life without parole] sentences.'  [Citation.]"  (*Ibid.*)

Section 1170, subdivision (d)(1) has undergone minor modifications, and has been re-designated as subdivision (d)(2).  Currently, section 1170, subdivision (d)(1)(A) provides:  [With certain exceptions described in section 1170, subdivision

5

(d)(1)(A),] "[w]hen a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing." "The petition shall include the defendant's statement that the defendant [meets these criteria], and the defendant's statement that one of the following is true: [¶] (A) The defendant was convicted pursuant to felony murder or aiding and abetting murder provisions of law. [¶] (B) The defendant does not have juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offense for which the sentence is being considered for recall. [¶] (C) The defendant committed the offense with at least one adult codefendant. [¶] (D) The defendant has performed acts that tend to indicate rehabilitation or the potential for rehabilitation . . . or showing evidence of remorse." (§ 1170, subd. (d)(2).) "If the court finds by a preponderance of the evidence that one or more of the statements specified in subparagraphs (A) to (D), inclusive, of paragraph (2) is true, the court shall recall the sentence and commitment previously ordered and hold a hearing to resentence the defendant in the same manner as if the defendant had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170, subd. (d)(5).)

"[W]hen determining whether to resentence the defendant to a term of imprisonment with the possibility of parole" the court considers factors enumerated in section 1170, subdivision (d)(6), as well as any other factors it deems relevant that it identifies on

6

the record.  (§ 1170, subd. (d)(6).)  The court can also impose a lesser sentence if certain circumstances were a contributing factor in the commission of the offense.  (§ 1170, subd. (d)(8)(A)–(C).)

### 3.　**People v. Heard**

In *Heard, supra*, 83 Cal.App.5th 608, a jury found the defendant guilty of two counts of attempted willful, deliberate, and premeditated murder and found true the allegations that he committed the offenses for the benefit of a criminal street gang and personally used a firearm in commission of the crimes. (*Id*. at pp. 613–614.)  A third count was severed, and Heard pleaded guilty to voluntary manslaughter with gang and personal gun use enhancements.  (*Id*. at p. 614.)  The trial court sentenced Heard to a term of 23 years plus 80 years to life.  (*Ibid*.)  The judgment was affirmed on appeal.  (*Ibid*.)

Years later, Heard filed a petition for recall and resentencing pursuant to section 1170, subdivision (d)(1)(A), asserting that, in addition to meeting other statutory criteria, he had been given a de facto LWOP sentence.  (*Heard, supra*, 83 Cal.App.5th at p. 621.)  The trial court denied the petition on the basis that section 1170, former subdivision (d)(1)(A)(i) was only available to juveniles expressly sentenced to LWOP, and Heard had not been expressly sentenced to LWOP.  (*Id*. at pp. 621–622.) Heard appealed, arguing that section 1170, subdivision (d)(1)(A) should be interpreted to apply to juvenile offenders serving the functional equivalent of LWOP.  (*Id*. at p. 622.)  Alternatively, Heard argued that if the statute did not apply to juvenile

7

offenders serving de facto LWOP sentences, the statute violated the constitutional guarantee of equal protection. (*Ibid*.)

The Court of Appeal held that, as a matter of statutory interpretation, the Legislature intended to limit section 1170, subdivision (d)(1)(A) to juvenile offenders serving "an explicitly designated term of life without parole" and did not include "defendants sentenced to multiple terms that in the aggregate constitute the functional equivalent of life without parole." (*Heard*, *supra*, 83 Cal.App.5th at p. 623.) The court reasoned that, looking at the plain language of the statute, "the phrase 'life without the possibility of parole' denotes a specific sentence and is used elsewhere in the Penal Code to specify that punishment as distinct from other punishments." (*Ibid*.) Additionally, "section 1170, subdivision (d)(1)(A), uses the singular when referring to '*the offense* for which the defendant was sentenced to imprisonment for life without the possibility of parole.' (§ 1170, subd. (d)(1)(A), italics added.) For a single offense to result in a life without parole sentence, the sentence must be one of an explicitly designated life without parole." (*Id*. at pp. 623–624.) Although it was not necessary to go beyond the plain language of the statute, the court held that the legislative history also supported this interpretation. (*Ibid*. at pp. 624–625.)

The Court of Appeal agreed with Heard, however, that there was no rational basis for barring juvenile offenders sentenced to the functional equivalent of LWOP from recall and resentencing available to juvenile offenders sentenced to LWOP. (*Heard*, *supra*, 83 Cal.App.5th at p. 626.) In analyzing Heard's equal protection claim, the court first determined that juvenile offenders sentenced to de facto LWOP were similarly situated to juvenile offenders sentenced to LWOP. (*Id*. at pp. 627–631.) The

8

court concluded that "[t]he only difference between [Heard] and the defendants to whom this provision applies is that he was sentenced to 23 years plus 80 years to life, rather than life without parole." (*Id*. at p. 628.)

The *Heard* court rejected the People's argument that Heard's sentence was no longer the functional equivalent of LWOP after the enactment of section 3051, subdivision (b)(3), which entitles a defendant like Heard to a youth offender parole hearing in their 25th year of incarceration; specifically, section 3051 provides a hearing to a defendant who had " ' "reformed" ' " and "was convicted of a controlling offense that was committed when the person was 25 years of age or younger and for which the sentence is a life term of 25 years to life[.]" (*Heard*, *supra*, 83 Cal.App.5th at p. 628.) The *Heard* court acknowledged that in *People v. Franklin* (2016) 63 Cal.4th 261, the Supreme Court held that, due to retroactive operation of section 3051, Franklin, who was serving a sentence of 50 years to life, was no longer serving a term of LWOP or de facto LWOP. (*Id*. at p. 629.) But the *Heard* court emphasized that the Supreme Court also held that Franklin's original sentence nonetheless remained binding, so there was no need for resentencing. (*Ibid*.) The *Heard* court explained that "[b]ecause section 1170, subdivision (d)(1)(A), refers to the 'offense for which the defendant *was sentenced* to imprisonment for life without the possibility of parole' (italics added), and Heard was sentenced to the functional equivalent of a life without parole sentence, he is similarly situated with the juvenile offenders whose sentences make them eligible to seek resentencing." (*Ibid*.)

The court also rejected the People's argument that Heard was not similarly situated to LWOP defendants because Heard

9

had committed a different crime than defendants eligible for relief under section 1170, subdivision (d)(1)(A).  The *Heard* court reasoned that Heard and LWOP defendants were similarly situated " ' " "*for purposes of the law challenged*" " ' ", because section 1170, subdivision (d)(1)(A) did not provide relief based upon the defendant's commission of a specific offense.  (*Id*. at pp. 630–631.)

The *Heard* court held that differential treatment of defendants expressly sentenced to LWOP and defendants sentenced to terms amounting to de facto LWOP was not constitutionally justified because it could not meet rational basis scrutiny.  (*Heard, supra*, 83 Cal.App.5th at pp. 631–634.)  Under amendments to section 3051, subdivision (b), both groups, subject to limited exceptions, would be entitled to youth offender parole hearings in their 25th year of incarceration.  (*Id*. at p. 632.)  The court rejected the People's argument that the Legislature may have determined that LWOP was too harsh a penalty for juvenile offenders because "the same concern applies equally to juveniles sentenced to the functional equivalent of life without parole." (*Ibid*.)  The court determined that differential treatment could not be justified by relative culpability, either.  (*Id*. at pp. 632–633.)  Making resentencing available to juvenile offenders convicted of special circumstance first degree murder and sentenced to LWOP—" 'the most heinous acts' " proscribed by law—and not affording the same opportunity to " ' "defendants who do not kill, intend to kill, or foresee that life will be taken" ' . . . has the incongruous effect of extending sentencing leniency exclusively to the category of offenders generally regarded as the least deserving of it." (*Id*. at p. 633.)  Disparate treatment could not be justified based on the fact that juvenile

offenders sentenced to de facto LWOP were more culpable than juvenile offenders sentenced to LWOP because they necessarily committed multiple crimes; a juvenile sentenced to LWOP could also have committed multiple crimes.  (*Ibid.*)  The *Heard* court reversed the trial court's order and remanded for the trial court to consider the merits of Heard's petition.[2]  (*Id.* at pp. 624–625.)

## B.    *Analysis*

Sanders contends that the trial court erred when it determined that his sentence of 45 years to life was not the functional equivalent of LWOP, and that he was therefore ineligible for recall and resentencing under section 1170, subdivision (d)(1) pursuant to *Heard, supra*, 83 Cal.App.5th 608.

---

[2] After the parties filed briefing in this case but before oral argument, the Court of Appeal, Second District, Division Seven decided *People v. Munoz* (2025) 110 Cal.App.5th 499 (rev. granted Jun. 25, 2025, S290828), in which it held that a sentence of 50 years to life is not the functional equivalent of LWOP.  The *Munoz* court observed that *Heard* "did not discuss how to calculate whether a defendant's sentence is the functional equivalent of life without the possibility of parole (or whether, in non[-]obvious cases, a court should be making that calculation)" and concluded that *Heard* is useful only when the sentence will unquestionably exceed a juvenile offender's natural life span.  (*Id.* at p. 508.)  The *Munoz* court instead based its holding on the conclusion that, following the guidance of our Supreme Court in *People v. Caballero* (2012) 55 Cal.4th 262, "Munoz will be 65 years old when he becomes eligible for parole (putting aside any hearing he may receive under § 3051) and will have a realistic opportunity to obtain release from prison during his expected lifetime."  (*Id.* at p. 508.)

11

The People do not contend that *Heard* is incorrectly decided and do not contest that a term of 50 years to life is the functional equivalent of LWOP under *People v. Contreras* (2018) 4 Cal.5th 349 (*Contreras*).  The People argue only that Sanders's shorter sentence of 45 years to life is not the functional equivalent of LWOP.

We conclude that, interpreting the language of section 1170, subdivision (d) as the court in *Heard* did, Sanders's sentence of 45 years to life is the functional equivalent of a sentence to LWOP.  We reverse the trial court's order and remand for the court to determine whether Sanders is otherwise eligible for recall and resentencing under section 1170, subdivision (d).

## 1.    Youthful Offender Parole, Elderly Parole, and Conduct Credits

As we discussed above, in *Heard*, the court interpreted section 1170, subdivision (d) to refer "to the 'offense for which the defendant *was sentenced* to imprisonment for life without the possibility of parole . . . .' " (*Heard, supra*, 83 Cal.App.5th at p. 629.)  The *Heard* court rejected the argument that the youth offender parole hearings provided for under section 3051 "reformed" the nature of Heard's sentence, because section 1170, subdivision (d)(1) calls for a sentence to be evaluated at the time that it was imposed.  Section 3051 was enacted *after* Heard was sentenced.

Here, the People contend that Sanders's sentence is not the functional equivalent of LWOP because he will be eligible for a youth offender parole hearing at the age of 41 and will be eligible

12

for an elderly parole hearing at the age of 50 pursuant to section 3055. With respect to youth offender parole hearings, the People offer no substantive argument for deviating from *Heard*, and given that the plain language of section 1170, subdivision (d)(1), refers to the defendant's sentence at the time it was imposed, there appears to be no basis for us to do so. Similarly, the elderly parole program was established *after* Sanders was sentenced. (See Stats. 2017, ch. 676, § 3, adding Pen. Code, § 3055, subd. (a) ["The Elderly Parole Program is hereby established, to be administered by the Board . . . for the purposes of reviewing the parole suitability of any inmate who is 50 years of age or older and has served a minimum of 20 years of continuous incarceration"].) The People offer no argument as to why section 3055 should reform an earlier sentence when section 3051 does not, other than to state that the *Heard* court did not consider the effect of the elderly parole program. We can see no basis for distinguishing between the two statutes in this context—both were enacted after Sanders was sentenced. Sanders's sentence did not include the possibility for early parole under either statute at the time that the sentence was imposed.

The People also contend that we should take into account the rate at which Sanders can expect to accumulate custody credits while in prison. However, considering a defendant's credits when determining whether a sentence is the functional equivalent of LWOP for purposes of section 1170, subdivision (d)(1) presents several difficulties.

First, in Sanders's case, it is not clear whether the trial court had accurate information before it regarding Sanders's credits. In the respondent's brief, the People state that the prosecutor presented evidence of Sanders's custody credits in the

13

written opposition to Sanders's petition and that the trial court considered that evidence in making its ruling.  However, the information contained in the People's opposition filed in the trial court was inaccurate—the opposition refers to Sanders as having been sentenced in 2007 to 60 years to life with a total of 686 days of credit (purportedly, Sanders's sentence was reduced to 50 years to life in 2008).  In fact, Sanders was sentenced to 45 years to life in 2002.  He was awarded 338 custody credits, which included 294 credits for days actually spent in presentence custody (i.e., days that would not decrease his total time served) and 44 days of good time/good conduct credit.  Additionally, the People's opposition stated that, beginning on May 1, 2021, Sanders was eligible to accrue credits at a rate of 33.3 percent under 15 California Code Regulations, section 3043.2, subdivision (b)(2)(B).  The People provided no information regarding the rate at which Sanders was eligible to receive credit prior to May 1, 2021, and no information as to how much credit Sanders had actually accrued at the time the opposition was filed.  Rather, the People calculated Sanders's credits based on the May 1, 2021 rate of 33.3 percent over an inaccurate 50-years-to-life sentence to arrive at a parole date advance of 16.65 years.  Nothing in the record on appeal shows that these calculations were corrected, and the trial court's ruling refers only vaguely to "the conduct credit that will undoubtedly occur."

Second, the accrual of conduct credit is not a certainty in *any* case.  In *Contreras*, *supra*, 4 Cal.5th at page 378, our Supreme Court declined to opine on the effect of conduct credit because, as here, there was no information in the record regarding how good time credit operates in practice.  *Contreras* observed that "[g]ood conduct credit is subject to forfeiture upon

14

'a finding of guilt of a serious rule violation in accordance with section 3323.' (Cal. Code Regs., tit. 15, § 3043.2, subd. (c).) The activities that can constitute a 'serious rule violation' span a broad range of conduct. (*Id.*, §§ 3315, 3323.)" (*Id.* at pp. 378–379.) The *Contreras* court emphasized that "the record before us contains no information on how likely it is that an inmate can achieve a spotless prison record over a span of four or more decades. Nor is it clear that *Graham's* requirement of a 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation' (*id.* at p. 75) would be satisfied by a parole eligibility date that is contingent upon a perfect or near-perfect record in prison. (See *Graham*, *supra*, 560 U.S. at p. 70 ['the remote possibility' of release does not satisfy the Eighth Amendment].)" (*Id.* at p. 379.)

Finally, as we have discussed, under section 1170, subdivision (d)(1) we evaluate a defendant's sentence at the time that it is imposed. When Sanders was sentenced, he had earned 44 days of conduct credit—a relatively insignificant reduction in the time that he would have to wait for a parole eligibility hearing.

## 2.    Sentence at the Time of Imposition

The People contend that even if we evaluate Sanders's sentence as the full 45 years to life imposed, it is not the functional equivalent of LWOP because Sanders will be 61 years old when he becomes eligible for parole, which is "well within his expected lifespan" and "a sufficiently young age to permit [him] to reintegrate into society as a productive citizen." The People do not support their statements with data or substantive argument.

15

They simply cite precedent in Pennsylvania, Nebraska, and New Mexico holding that defendants who would be eligible for parole in their early 60's are not serving the functional equivalent of an LWOP sentence.  (See *Commonwealth v. McGrath* (Pa. Super. Ct., June 28, 2021) 2021 PA Super 132 [defendant eligible for parole at age 65]; *Commonwealth v. Lekka* (Pa. Super. Ct., May 10, 2019) 2019 PA Super 155 [defendant eligible for parole at age 62]; *State v. Smith* (2017) 295 Neb. 957, 978 [defendant eligible for parole at age 62]; *Ira v. Janecka* 2018-NMSC-027, ¶ 35, 419 P.3d 161[defendant eligible for parole at age 62].)

We find these few out-of-state cases unpersuasive and decline to follow them here.  Instead, based on our individualized assessment of Sanders's history and characteristics—including his age at the time he was incarcerated, the length of time that he has already served, and the evidence submitted in connection with his petition—we conclude his 45 years to life sentence does not provide "a realistic hope of release and a genuine opportunity to reintegrate into society."   (*Contreras*, *supra*, 4 Cal.5th at p. 373.)  We therefore hold that Sanders's sentence is the functional equivalent of LWOP in the context of section 1170, subdivision (d)(1) and he is not categorically ineligible for relief under that statute.

16

## DISPOSITION

We reverse the trial court's order and remand for the court to determine whether Sanders is otherwise eligible for recall and resentencing under section 1170, subdivision (d)(1)(A).

NOT TO BE PUBLISHED.


                                          MOOR, J.

WE CONCUR:


BAKER, Acting, P. J.


KIM (D.), J.

17